FILED
United States Court of Appeals
Tenth Circuit

December 29, 2009

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

RODRIGO RIVERA-OROS,

      Defendant-Appellant.

No. 08-2035

_____

**Appeal from the United States District Court
for the District of New Mexico
(D.C. No. CR-07-00057-JCH)**
_____

Scott M. Davidson, Albuquerque, New Mexico, for Defendant-Appellant.

David N. Williams, Assistant United States Attorney (Gregory J. Fouratt, United States Attorney, with him on the brief), Albuquerque, New Mexico, for Plaintiff-Appellee.

_____

Before **O'BRIEN**, **TYMKOVICH,** and **HOLMES**, Circuit Judges.
_____

**HOLMES**, Circuit Judge.
_____

      Defendant-Appellant Rodrigo Rivera-Oros pleaded guilty to one count of

reentering the United States after having been previously deported following a

felony conviction, in violation of 8 U.S.C. § 1326(a), (b). The district court calculated a modified advisory Guidelines range—including a criminal history downward departure—yielding a range of forty-six to fifty-seven months' imprisonment. It sentenced Mr. Rivera-Oros to forty-six months' imprisonment. Mr. Rivera-Oros challenges the court's calculation of the Guidelines range, arguing that the district court incorrectly applied a sixteen-level enhancement to his offense level for having previously committed a crime of violence. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). Finding no error, we affirm.

## I. BACKGROUND

Mr. Rivera-Oros is a Mexican citizen who has lived in the United States for almost his entire life. In 2005, he was arrested and convicted in the Superior Court of Maricopa County, Arizona, of felony burglary in the second degree, which carries a maximum term of three and a half years' imprisonment.[1] Mr. Rivera-Oros was sentenced to six months' imprisonment, followed by three years' probation. After serving his sentence, Mr. Rivera-Oros was released to federal immigration officers and was deported.

On October 6, 2006, Mr. Rivera-Oros was arrested by the United States

---

[1] Mr. Rivera-Oros had unlawfully and without permission entered the home of his alleged girlfriend's mother and was found by the police on the premises. The mother reported to law enforcement that jewelry was missing from the home.

Border Patrol near Hachita, New Mexico, while in the process of crossing the border into the United States. He admitted that he had entered the country illegally. Mr. Rivera-Oros was indicted in the District of New Mexico on one count of illegally reentering the United States after having been previously deported, in violation of 8 U.S.C. § 1326(a), (b). He pleaded guilty without a plea agreement. According to the presentence investigation report ("PSR"), Mr. Rivera-Oros's total offense level was 21, which included a sixteen-level enhancement for having previously committed a crime of violence, namely his 2005 burglary conviction. *See* United States Sentencing Guidelines Manual ("U.S.S.G.") § 2L1.2(b)(1)(A) (2007). Mr. Rivera-Oros had a criminal history score of 8, which placed him in criminal history category IV. However, concerned that his criminal history score might over-represent his future dangerousness and his risk of recidivism, the PSR suggested that Mr. Rivera-Oros was more similarly situated to defendants with a criminal history category of III.

Mr. Rivera-Oros filed a sentencing memorandum objecting to the PSR. R., Vol. I, Doc. 52 (Sentencing Mem., filed Jan. 15, 2008). However, he did not challenge the calculation of the Guidelines range. Instead, he argued that a below-Guidelines sentence was "'sufficient, but not greater than necessary.'" *Id.* at 3-4 (quoting 18 U.S.C. § 3553(a)).

The district court agreed that Mr. Rivera-Oros's criminal history score over-represented the seriousness of his criminal history. Therefore, pursuant to

U.S.S.G. § 4A1.3(b)(1), the court departed downward, assigning Mr. Rivera-Oros to criminal history category III. Based on a criminal history category III and an offense level of 21, the modified advisory Guidelines range was forty-six to fifty-seven months' imprisonment. The court denied Mr. Rivera-Oros's requests for a variance or further departure and sentenced him to forty-six months' imprisonment, the bottom of the modified advisory Guidelines range.

This appeal followed. The only issue is whether Mr. Rivera-Oros's prior burglary conviction is a "crime of violence" supporting a sixteen-level increase to his offense level.

## II. DISCUSSION

### A. Standard of Review

Whether a prior offense is a "crime of violence" under U.S.S.G. § 2L1.2(b) is a question of law that we generally review de novo. *United States v. Maldonado-Lopez,* 517 F.3d 1207, 1208 (10th Cir. 2008); *see also United States v. Juarez-Galvan*, 572 F.3d 1156, 1158 (10th Cir.), *cert. denied __ S. Ct. __*, 2009 WL 3415133 (2009). But when a defendant fails to object to the district court's application of a Guidelines enhancement, we review only for plain error. *United States v. Romero*, 491 F.3d 1173, 1176-77 (10th Cir. 2007); *see also United States v. Garcia-Caraveo*, 586 F.3d 1230, 1232 (10th Cir. 2009); *Juarez-Galvan*, 572 F.3d at 1158. Mr. Rivera-Oros concedes that he did not object to the district court's application of the sixteen-level enhancement for having committed a

crime of violence. Therefore, plain error review applies. To prevail under the plain error standard, the appellant must prove that the district court (1) committed an error, (2) that was "clear or obvious under current law," and which (3) affects the appellant's "substantial rights." *United States v. Goode*, 483 F.3d 676, 681 (10th Cir. 2007) (internal quotation marks omitted); *see United States v. Olano*, 507 U.S. 725, 733-37 (1993). If these requirements are met, "this Court may exercise discretion to correct the error if it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Goode*, 483 F.3d at 681 (internal quotation marks omitted); *see Juarez-Galvan*, 572 F.3d at 1158-59. However, we conclude that the district court did not commit any error, plain or otherwise, and consequently, we affirm.

## B. Crime of Violence Framework

The Guidelines impose a sixteen-level enhancement if an alien "was deported, or unlawfully remained in the United States, after . . . a conviction for a felony that is . . . a crime of violence." U.S.S.G. § 2L1.2(b)(1). A "crime of violence" is defined as:

> murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, *burglary of a dwelling*, or any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

-5-

U.S.S.G. § 2L1.2, cmt. n.1(B)(iii) (2007) (emphasis added).[2]  This definition is disjunctive.  A felony conviction qualifies as a crime of violence if either (1) the defendant was convicted of one of the twelve enumerated offenses; or (2) the use, attempted use, or threatened use of physical force was an element of the offense. *United States v. Zuniga-Soto*, 527 F.3d 1110, 1115 (10th Cir. 2008); *see Juarez-Galvan*, 572 F.3d at 1159 ("[W]e have explained that there are two ways that a felony conviction could constitute a crime of violence." (footnote omitted)).  The only issue before us is whether Mr. Rivera-Oros was convicted of the enumerated offense of "burglary of a dwelling."  The government does not claim, nor is there any reason to believe, that the use of force was an element of his 2005 burglary conviction.

The definition and scope of the enumerated offenses are questions of federal law.  The label that a state attaches to a crime under its laws does not determine whether it is a Guidelines enumerated offense.  *United States v. Servin-Acosta*, 534 F.3d 1362, 1366 (10th Cir. 2008) ("[W]e have rejected the notion that whether a state conviction was for an enumerated but undefined crime 'depends upon how the crime is characterized under state law.'" (quoting *United States v. Vasquez-Flores*, 265 F.3d 1122, 1124 (10th Cir. 2001)); *see Juarez-Galvan*, 572

---

[2]     The Probation Office used the 2007 edition of the U.S.S.G. in preparing the PSR.  The parties have not contested the applicability of that edition on appeal.  Accordingly, in conducting our analysis, we also use the 2007 edition.

F.3d at 1159 (noting that California's "designation" of the offenses at issue is "not dispositive").

Instead, the enumerated offenses of § 2L1.2 are defined by their "generic, contemporary meaning." *Taylor v. United States*, 495 U.S. 575, 598 (1990); *see also Juarez-Galvan*, 572 F.3d at 1159 ("[W]e must consider 'the uniform generic definition' of the enumerated offense, and then determine whether the state statute corresponds to that generic definition."). We look to a wide range of sources to determine the generic meaning of an enumerated offense, including federal and state statutes, the Model Penal Code, dictionaries, and treatises. *Taylor*, 495 U.S. at 598; *see Garcia-Caraveo*, 586 F.3d at 1233 (noting that we employ "the analytical framework set out" in *Taylor*, looking to state statutes "as well as prominent secondary sources, such as criminal law treatises and the Model Penal Code"); *accord United States v. Torres-Diaz*, 438 F.3d 529, 536 (5th Cir. 2006) (noting that as "a source of generic contemporary meaning, we turn to the Model Penal Code and to Professors LaFave and Scott's treatise, Substantive Criminal Law"). To determine whether a previous conviction satisfies the generic meaning of the offense, ordinarily we apply "a formal categorical approach, looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." *Taylor*, 495 U.S. at 600.

The government argues that the district court correctly applied the sixteen-level enhancement. It notes that, in *Taylor*, the Supreme Court defined generic

burglary as "any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Id.* at 599. Mr. Rivera-Oros was convicted of second-degree burglary, which, under Arizona law, is defined as "entering or remaining unlawfully in or on a residential structure with the intent to commit any theft or any felony therein." Ariz. Rev. Stat. Ann. § 13-1507(A). The government argues that the Arizona statute "is essentially a linguistic duplicate of the *Taylor* language." Aplee. Br. at 9.[3]

---

[3]     In the alternative, the government suggests that we have previously held that Arizona's second-degree burglary statute is a crime of violence. Aplee. Br. at 7-8 (citing *United States v. Cornelio-Pena*, 435 F.3d 1279 (10th Cir. 2006)). However, the government's reliance on *Cornelio-Pena* is misplaced. Mr. Cornelia-Pena had been deported after being convicted in Arizona of solicitation to commit burglary in the second degree. *Cornelio-Pena*, 435 F.3d at 1281-82. When he was later found in the United States, Mr. Cornelia-Pena pleaded guilty to illegal reentry, but he challenged the application of the sixteen-level crime of violence enhancement. *Id.* He argued that even if burglary of a dwelling is a crime of violence, *solicitation* to commit burglary of a dwelling is not. *Id.* at 1282-83.

According to the Guidelines, a crime of violence "include[s] the offenses of aiding and abetting, conspiring, and attempting, to commit such offenses." U.S.S.G. § 2L1.2 cmt. n.5. We concluded, based on the Guidelines' use of the word "include," that "offenses similar to aiding and abetting, conspiring, and attempting to commit offenses that otherwise meet the definition of 'crime of violence' are included in § 2L1.2(b)(1)(A)(ii)." *Cornelio-Pena*, 435 F.3d at 1284. We found that solicitation is sufficiently similar to aiding and abetting. *Id.* at 1288. Therefore, solicitation to commit a crime of violence is also a crime of violence. Because the parties in that case did *not* dispute whether the substantive offense of Arizona's statute fell within the generic definition of the § 2L1.2 enumerated offense (i.e., burglary of a dwelling), we simply assumed, but did not

(continued...)

-8-

Mr. Rivera-Oros claims that the Arizona statute is significantly broader than generic burglary. Both *Taylor* and the Arizona statute define burglary to require breaking and entering a "structure." However, Mr. Rivera-Oros claims that Arizona defines "structure" in a way that is incompatible with *Taylor*. In *Taylor*, the Supreme Court explained that several states had adopted burglary statutes that were broader than the generic definition because they "includ[e] places, such as automobiles and vending machines, other than buildings." *Taylor*, 495 U.S. at 599 (citing, as an example, a Missouri statute that "included breaking and entering any booth or tent, or any boat or vessel, or railroad car" (internal quotation marks omitted)). Mr. Rivera-Oros suggests that, under *Taylor*, a "building or structure" must be both permanent and immovable. Aplt. Br. at 10-12; *see also United States v. Grisel*, 488 F.3d 844, 848 & n.2 (9th Cir. 2007) ("In using the term 'building or structure,' the Court encapsulated the common understanding of the word 'building'—a structure designed for occupancy that is intended for use in one place.").[4] By contrast, Arizona defines a "residential

---

[3](...continued)
decide, that issue. *Id.* at 1282 ("It is *uncontested* that burglary of a dwelling is a crime of violence under U.S.S.G. § 2L1.2(b)(1)(A)(ii)." (emphasis added)). Therefore, nothing in *Cornelio-Pena* dictates the outcome in this case.

[4] While *Taylor* clearly limits the places that can be burglarized, we have not gone as far as the Ninth Circuit. Generic burglary can include structures other than buildings. *United States v. Cummings*, 531 F.3d 1232, 1235 (10th Cir. 2008). In *Taylor*, the Supreme Court used the phrase "building or other structure." 495 U.S. at 598. In *Cummings*, we "decline[d the] invitation to find
(continued...)

-9-

structure" as "any structure, *movable or immovable*, permanent or temporary, that is adapted for both human residence and lodging whether occupied or not."  Ariz. Rev. Stat. Ann. § 13-1501(11) (emphasis added).  Mr. Rivera-Oros claims that this definition includes boats and tents, both of which *Taylor* expressly excludes.

## C.    Generic Burglary of a Dwelling

Both the government and Mr. Rivera-Oros uncritically assume that *Taylor*'s definition of generic burglary applies to this case.  We conclude that this particular definition (as opposed to *Taylor*'s general analytic approach) is not controlling here.  In *Taylor*, the Supreme Court was interpreting the "three-strikes" provision of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), which includes "burglary" in its enumerated list of violent felonies.  18 U.S.C. § 924(e)(2)(B)(ii).  Here, we must interpret the Sentencing Guidelines, where the enumerated felony is the more specific "burglary of a dwelling," not "burglary."[5]  Although we have consistently applied *Taylor*'s methodology to the

[4](...continued)
the phrase 'or other structure' superfluous."  531 F.3d at 1235.  Therefore, we disagree with the Ninth Circuit's suggestion that "the substitution of the term 'building or structure' for the term 'building' . . . . was one of form, not substance."  *Grisel*, 488 F.3d at 848.

[5]    There are numerous other differences between the two provisions.  Although both 18 U.S.C. § 924(e) and U.S.S.G. § 2L1.2(b) involve sentencing enhancements for defendants who have previously been convicted of a "crime of violence," they define a "crime of violence" quite differently.  First, § 924(e)(2)(B)(ii) lists only four enumerated offenses—burglary, arson, extortion, and crimes involving the use of explosives—compared to the twelve enumerated

(continued...)

Sentencing Guidelines, *see, e.g.*, *United States v. Perez-Vargas*, 414 F.3d 1282, 1284 (10th Cir. 2005), *Taylor* does not claim to provide a generic definition of "burglary of a dwelling." Our analysis must be attuned to the particular statute or guideline in question. *Cf. Nijhawan v. Holder*, 129 S. Ct. 2294, 2300 (2009) (holding that *Taylor*'s categorical approach does not apply to an immigration statute's provision establishing that an alien may be deported if convicted of an "aggravated felony," including an offense defined as one involving fraud or deceit, despite the similarities to 18 U.S.C. § 924(e)).

---

[5](...continued)
offenses in § 2L1.2(b). Second, while § 924(e) has fewer enumerated offenses, when one includes the non-enumerated offenses conceivably covered by the statute, § 924(e)'s definition is much broader. Specifically, both provisions include felonies that have the use of force as an element of the offense. *See* U.S.S.G. § 2L1.2 cmt. n.1(B)(iii); 18 U.S.C. §924(e)(2)(B)(i). However, § 924(e) also includes crimes that "otherwise involve[] conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). By contrast, such a crime is only an "aggravated felony" under the Guidelines, subject to an eight-level, not a sixteen-level, enhancement. *See* U.S.S.G. § 2L1.2(b)(1)(C); *id.* cmt. n.3(A).

The provisions also differ in their application and effect. The Guidelines enhancement applies to any alien who has been convicted of even a single crime of violence. Section 924(e) requires three prior convictions. And while the sixteen-level crime-of-violence enhancement is one of the largest in the Guidelines, its expected effect in increasing the length of a sentence is hardly comparable to the fifteen-year mandatory minimum sentence specified in § 924(e). (For example, regarding an alien with a criminal history category III, the base offense level of eight would result in a Guidelines range of six to twelve months. With the sixteen-level crime-of-violence enhancement, the recommended Guidelines range becomes sixty-three to seventy-eight months, assuming that no other adjustments apply.)

-11-

Our case law does not establish the meaning of "burglary of a dwelling" as used in § 2L1.2.  Nevertheless, several of our cases have dealt with the career offender guideline, U.S.S.G. § 4B1.2(a), which also defines "crime of violence" to include "burglary of a dwelling."  In *United States v. Smith*, 10 F.3d 724 (10th Cir. 1993), we found that the Sentencing Commission's decision to include "burglary of a dwelling," but to exclude other forms of burglary from § 4B1.2 represented an explicit policy choice—one that was "diametrically opposed to the position taken by Congress" in enacting the ACCA.  *Id.* at 732.  "Congress thought ordinary burglaries, *as well as* burglaries involving some element making them especially dangerous, presented a sufficiently 'serious potential risk' to count toward enhancement [under the ACCA]."  *Taylor*, 495 U.S. at 597 (emphasis added).  However, "[t]he Sentencing Commission has obviously declined to adopt that view," *Smith*, 10 F.3d at 733, opting for a more narrowly focused approach centered on the severity of the burglary.  *Id.* at 732 ("[T]he Commission has made it clear that it does *not* view 'second-degree' or 'unaggravated' burglaries of structures other than dwellings as crimes of violence.").  We also noted that the definition of "crime of violence" in § 4B1.2 is "patterned after § 924(e)(2)(B) with one significant difference.  The Commission's definition conspicuously omitted burglary, with the single exception of 'burglary *of a dwelling*.'" *Id.* at 733 (citation omitted).

Ultimately, our task in interpreting the Guidelines is to determine the intent

of the Sentencing Commission. *United States v. O'Flanagan*, 339 F.3d 1229, 1235 (10th Cir. 2003) ("We must interpret and apply the sentencing guidelines in a manner consistent with the Sentencing Commission's intent."). At least with respect to burglary, the Commission has reached a different conclusion than Congress did in enacting the ACCA. Therefore, since the Supreme Court's decision in *Taylor* was based on the ACCA's language and purpose, we conclude that *Taylor*'s definition of generic burglary does not dictate the result in this case. We agree with the Fifth Circuit that "*Taylor*'s definition of generic burglary, although instructive, does not strictly apply to the specific offense 'burglary of a dwelling' as used in the Guidelines." *United States v. Murillo-Lopez*, 444 F.3d 337, 344-45 (5th Cir. 2006).

Even looking to our cases interpreting § 4B1.2, our precedents do not answer the specific question before us—whether a "dwelling" must be a permanent, immovable structure. In *United States v. Bennett*, 108 F.3d 1315 (10th Cir. 1997), we found that Oklahoma's first-degree burglary statute, which requires "'break[ing] into and enter[ing] the dwelling house of another, in which there is at the time some human being'" was "burglary of a dwelling" and, therefore, a crime of violence. *Id.* at 1317 (quoting Okla. Stat. tit. 21, § 1431). At the same time, we found that the State's second-degree burglary statute, which applies to any "'structure or erection, in which any property is kept,'" was obviously overbroad because it is not limited to dwellings. *Id.* (quoting Okla.

-13-

Stat. tit. 21, § 1435).  Similarly, in *United States v. Forsythe*, 437 F.3d 960 (10th Cir. 2005), we held that a New Jersey burglary statute that applies to "'any place adapted for overnight accommodation of persons, *or* for carrying on business therein'" is not "burglary of a dwelling" under § 4B1.2.  *Id.* at 963 (emphasis added) (quoting N.J. Stat. Ann. § 2C:18-2).

In determining the generic, contemporary meaning of burglary of a dwelling, and how it differs from generic burglary, it is important for us to reflect upon why the Sentencing Commission considers burglary of a dwelling, in particular, to be a crime of violence.  The invasion of one's home causes psychological harm that cannot be measured solely in terms of the value of lost property.  Blackstone described burglary, which at common law was limited to residences, as "a very heinous offence," because it is not simply a property crime, but is, instead, "a forcible invasion and disturbance of that right of habitation, which every individual might acquire even in a state of nature."[6]  4 William Blackstone, Commentaries *223.  Moreover, the unique wounds caused by residential burglary are independent of the size or construction of the dwelling.

---

[6]    In *Taylor*, the Supreme Court rejected the argument that enumerated offenses should be presumed to have their common law meaning.  495 U.S. at 592-94.  But nothing in *Taylor* requires us to ignore the societal interests reflected in the common law, especially when those same concerns are equally applicable today.  *See, e.g.*, *Calhoun v. State*, 820 P.2d 819, 821-22 (Okla. Crim. App. 1991) (citing cases from several other states and concluding that "burglary is a crime against habitation").

-14-

They are the same for the mansion house and the boarding house, the tract home and the mobile home. *See* Wayne R. LaFave, Substantive Criminal Law § 21.1(c) (2008).

This distinction between burglary and burglary of a dwelling is reflected in other sections of the Guidelines. The burglary Guideline, U.S.S.G. § 2B2.1, recognizes two different offenses—burglary of a residence and burglary of a structure other than a residence. Burglary of a residence has a base offense level of 17, while burglary of a structure other than a residence has a base offense level of 12. U.S.S.G. § 2B2.1(a). The Guidelines justify this higher offense level by the fact that residential burglaries pose an "increased risk of physical and psychological injury." *Id.* cmt. background; *see also United States v. McClenton*, 53 F.3d 584, 588 (3d Cir. 1995) ("[T]here is a much greater possibility of confronting the resident and a substantial risk that force will be used and that someone will be injured, than if one burglarized a building that was not intended for use as habitation . . . . We find that it is this element—the potential for confrontation and the substantial risk of harm—that the Guidelines intended for enhanced punishment under Section 4B1.2."). Had the Sentencing Commission intended residential burglary to be a subset of generic burglary, there would be no reason to have two separate and distinct base offense levels.[7] Instead, the

_____

[7] This section also bolsters our conclusion that the Sentencing
(continued...)

Commission could have, consistent with its common practice, created a specific offense characteristic for the unified offense conduct of burglary of a structure that would provide for a five-level enhancement when the burglary was of a structure constituting a residence. *Cf.* U.S.S.G. § 2B2.3(b)(1) (providing as a specific offense characteristic for a two-level enhancement to the base offense level for trespass when the trespass occurred at certain secure government facilities and other locations including "at a residence").

The special importance of one's home also is reflected in state laws. Although nearly all states have expanded burglary beyond its common law roots,

---

[7](...continued)

Commission did not intend residential burglaries to be limited to "structures." One might argue that § 2B2.1, titled "Burglary of a Residence or a Structure Other than a Residence," is ambiguous as to whether or not a "residence" must be a "structure." We do not believe that the language is ambiguous: although a residence frequently will be a structure, it need *not* be. Moreover, any conceivable ambiguity could be resolved by considering previous versions of the Guidelines. Prior to 1993, § 2B2.1 only applied to "burglary of a residence" and made no mention of "structures." *See* U.S.S.G. § 2B2.1 (1992). Notably, burglary of a structure was covered by a different guideline. *See* U.S.S.G. § 2B2.2 (1992). The two sections were merged in 1993. U.S.S.G. app C, amend. 481 (1993). Amendment 481 eliminated twenty-five offense guidelines by merging similar sections. It was motivated by the "practical advantages" of such consolidations: "it shortens and simplifies the Guidelines Manual and reduces the likelihood of inconsistency in phraseology and definitions from section to section; it will reduce possible confusion and litigation as to which guideline applies to particular conduct; it will reduce the number of conforming amendments required whenever similar sections are amended; and it will aid the development of case law because cases involving similar or identical concepts and definitions can be referenced under one guideline rather than different guidelines." *Id.* Nothing in the amendment, however, suggests that it was intended to change the meaning of "burglary of a residence."

-16-

at least twenty-two states make burglary of a dwelling a more serious offense than other forms of burglary. LaFave, *supra* § 21.1(c) & n.87. A similar number permit the use of force, even deadly force, to defend one's home against burglary or other felonies. *Id.* § 10.6 nn.28-31.

In *Taylor*, the Supreme Court also looked to the Model Penal Code ("MPC") in trying to discern the generic, contemporary meaning of "burglary." 495 U.S. at 598 & n.8. In this case, however, the MPC is not particularly helpful in deciding whether "burglary of a dwelling" is limited to permanent structures. On the one hand, the MPC defines burglary to require entering "a building or occupied structure." MPC § 221.1(1). It then increases the grading of the offense from a felony in the third degree to a felony in the second degree "if it is perpetrated in the dwelling of another at night." *Id.* § 221.1(2). This grading scheme suggests that burglary of a dwelling is a species of burglary and that any limitations on "generic burglary" should also apply to "generic burglary of a dwelling."

On the other hand, the MPC defines "structure" more broadly than *Taylor* does. According to the MPC, "'occupied structure' means any structure, vehicle or place adapted for overnight accommodation of persons, or for carrying on business therein, whether or not a person is actually present." *Id.* § 221.0(1). Therefore, under the MPC, burglary of a vehicle could be a felony in the second degree if the vehicle, such as a house boat or a mobile home, was adapted for

-17-

overnight accommodations.  *See, e.g.*, *Commonwealth v. Nixon*, 801 A.2d 1241, 1244-46 (Pa. Super. Ct. 2002) (recognizing that under Pennsylvania's burglary statute, which is nearly identical to the MPC, "camp structures" and "house trailers" may be considered "adapted for overnight accommodation").  Furthermore, the MPC recognizes that burglary of a dwelling is a substantially more serious offense than other forms of burglary, concluding that "especially severe sanctions are appropriate for criminal invasion of premises under circumstances likely to terrorize occupants."  MPC § 221.1, explanatory note.

Black's Law Dictionary provides a similarly expansive definition of a "dwelling-house" as including "[a] building, a part of a building, a tent, a mobile home, or another enclosed space that is used or intended for use as a human habitation."  Black's Law Dictionary 582 (9th ed. 2009).  At least two other circuits have adopted an essentially identical definition of "dwelling" set out in an earlier edition of Black's Law Dictionary for purposes of interpreting § 4B1.2.  *See McClenton*, 53 F.3d at 587; *United States v. Graham*, 982 F.2d 315, 316 (8th Cir. 1992) (per curiam).  In *Graham*, the Eighth Circuit relied on this definition to conclude that burglaries of "structures used as shelters for weekend fishing retreats" are crimes of violence.  982 F.2d at 316.  In *McClenton*, the Third Circuit cited both the dictionary definition and *Graham* to support its conclusion that an unoccupied hotel room is a dwelling.  53 F.3d at 587.

We similarly conclude, based on the Sentencing Commission's heightened

concern for the harms associated with residential burglaries, the unbroken historical recognition of those harms, and the common understanding of the word "dwelling," that for purposes of the crime of violence enhancement in U.S.S.G. § 2L1.2, a "burglary of a dwelling" is not limited to permanent and immovable structures or buildings. Rather, a "dwelling" includes any "enclosed space that is used or intended for use as a human habitation." Black's Law Dictionary 582.

Our conclusion aligns with that of the Fifth Circuit. In *Murillo-Lopez*, the defendant challenged the application of § 2L1.2's crime-of-violence enhancement. 444 F.3d at 339, 341. Mr. Murillo-Lopez had pleaded guilty to burglary of "an inhabited dwelling house," in violation of Cal. Penal Code § 459.[8] *Id*. at 339-40. The district court concluded that his prior conviction was burglary of a dwelling and that the enhancement, therefore, applied. *Id*. at 339. Although the Fifth Circuit vacated his sentence on other grounds, it rejected Mr. Murillo-Lopez's argument that the California statute was overbroad. It concluded that *Taylor*'s definition of generic burglary was not controlling—*viz.*, it did not provide the dispositive answer concerning the generic meaning of the Guidelines enumerated

---

[8] The Fifth Circuit has recognized that a conviction under § 459 is not, categorically, a "burglary of a dwelling." First, the statute includes burglary of non-dwellings. *Murillo-Lopez*, 444 F.3d at 340. Second, one can be convicted under § 459 even if the entry was not "unlawful or unprivileged." *United States v. Ortega-Gonzaga*, 490 F.3d 393, 395 (5th Cir. 2007). However, neither of these concerns was at issue in *Murillo-Lopez* because the court applied the modified categorical approach, looking not only to the fact of conviction, but also to the facts alleged in the complaint. 444 F.3d at 339-40.

offense of burglary of a dwelling.[9]  *Id.* at 342-45.  It found that Mr. Murillo-Lopez had pleaded guilty to burglary of a dwelling, even though "California courts construe the terms 'building' and 'inhabited dwelling house' to include structures such as tents and vessels used for human habitation [that] do not fall within the scope of 'generic burglary' as defined by the Supreme Court."  *Id.* at 341, 345 (footnotes omitted); s*ee also United States v. Castillo-Morales*, 507 F.3d 873, 875 (5th Cir. 2007) ("Under the common-sense approach, a dwelling is any structure, including a tent or vessel, that is used for human habitation.").

We note that the Ninth Circuit has taken a different approach.  In *United States v. Wenner*, 351 F.3d 969 (9th Cir. 2003), the defendant was sentenced under the career offender guideline, U.S.S.G. § 4B1.2.  The Ninth Circuit concluded that Washington's burglary statute, Wash. Rev. Code. § 9A.52.025(1), was overbroad, because it included "burglarizing a fenced area that doubles as a dwelling."  *Wenner*, 351 F.3d at 972-73.  It reasoned that "the most logical and sensible reading of the Guidelines and the reading that is consistent with our cases is to construe 'burglary of a dwelling' as the *Taylor* definition of burglary, with the narrowing qualification that the burglary occur in a dwelling."  *Id.* at

---

[9]       In *Ortega-Gonzaga*, the Fifth Circuit held that "*Taylor*'s definition of 'burglary,' *aside from the structures in which a burglary can occur*, controls the definition of 'burglary of a dwelling' under the Guidelines." 490 F.3d at 395 (emphasis added).  However, the outcome in this case turns solely on the question of what constitutes a "dwelling."  We express no opinion as to whether there may be other differences between generic burglary and generic burglary of a dwelling.

973. However, in light of the differences in both language and purpose between the Guidelines and the ACCA, we do not find the Ninth Circuit's opinion to be persuasive. Therefore, we respectfully decline to follow it.

## D. Arizona's Burglary Statute

Having concluded that generic burglary of a dwelling is not limited to permanent, immovable structures, we must now consider whether the particular statute at issue, Ariz. Rev. Stat. Ann. § 13-1507, at least roughly corresponds to the generic definition of burglary of a dwelling. *See Garcia-Caraveo*, 586 F.3d at 1235-37. A state statute does not need to match the generic definition verbatim. The Guideline enhancement applies so long as the statute "corresponds in substance to the generic meaning." *Taylor*, 495 U.S. at 599; *see also Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007) ("[T]o find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's language. It requires a *realistic probability*, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." (emphasis added)).

As already mentioned, Arizona defines burglary in the second degree as "entering or remaining unlawfully in or on a residential structure with the intent to commit any theft or any felony therein." Ariz. Rev. Stat. Ann. § 13-1507(A). A "residential structure" is "any structure, movable or immovable, permanent or

-21-

temporary, that is adapted for both human residence and lodging whether occupied or not." *Id.* § 13-1501(11). The signature case applying the definition of "residential structure" is *State v. Gardella*, 751 P.2d 1000 (Ariz. Ct. App. 1988), in which the state court of appeals concluded that breaking into the laundry room of a hotel was not burglary of a residential structure. *Id.* at 1002. The court distinguished between buildings that are used exclusively as residences and those that also have commercial purposes. *Id.* If the location is a residence, then the statute applies so long as "the particular area entered is one that makes the building more suitable, comfortable or enjoyable for human occupancy." *Id.* "If, however, . . . the character of the building is commercial, then further inquiry must be made to determine the character of the use of the structure actually entered." *Id.* Under this analysis, a guest room in a hotel is a residential structure, but the gift shop in that same hotel is not. *Id.*; *see also State v. Hussain*, 942 P.2d 1168, 1170 (Ariz. Ct. App. 1997) (holding that a motel room qualifies as a residential structure); *State v. Bass*, 911 P.2d 549, 550-52 (Ariz. Ct. App. 1995) (noting that trial court properly instructed jury concerning only burglary of a non-residential structure, where structure at issue was an "almost-completed log cabin home" that lacked a certificate of occupancy, water, electricity, and doors, and prosecution failed to introduce substantial contrary evidence that the structure was "adapted for both human residence and lodging"); *State v. Ekmanis*, 901 P.2d 1210, 1211-13 (Ariz. Ct. App. 1995) (holding that a

storage area under the same roof as the main house, but separated by a walkway, is a residential structure).

Therefore, as interpreted by the Arizona courts, the term "residential structure" in Ariz. Rev. Stat. Ann. § 13-1507(A) corresponds in substance to the generic definition of "dwelling" reflected in the enumerated offense of § 2L1.2 (i.e., burglary of a dwelling). Nor is there a realistic probability that the Arizona courts would interpret the term "residential structure" in a manner that would sever this correspondence in the future. Accordingly, under the parties' arguments and our analysis in this case, we conclude that the district court did not err in determining that Mr. Rivera-Oros's second degree felony burglary conviction pursuant to the Arizona statute constituted a crime of violence under § 2L1.2, warranting a sixteen-level enhancement.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's sentencing order.