GRIFFIN, Circuit Judge,
dissenting.
I respectfully disagree with the majority’s conclusion that defendant Rede-Mendez’s prior New Mexico conviction for aggravated assault (deadly weapon) is not a crime of violence that triggers the sixteen-level sentencing enhancement of U.S.S.G. § 2L1.2(b)(1)(A). Two of our sister circuits have held that aggravated assault with a deadly weapon committed in violation of N.M. Stat. § 30-3-2(A) has as an element “the use, attempted use, or threatened use of physical force against the person of another” and therefore qualifies as a crime of violence for sentencing purposes. See United States v. Silva, 608 F.3d 663 (10th Cir.2010), cert. denied — U.S. -, 131 S.Ct. 1473, 179 L.Ed.2d 313 (2011); United States v. Licon-Nunez, 230 Fed.Appx. 448 (5th Cir.2007). I would follow the rationale of these courts and hold that the district court properly applied the enhancement in the present case. Therefore, Rede-Mendez’s sentence is procedurally reasonable and should be affirmed.
I.
In March 2001, Rede-Mendez robbed a coffee shop in Ranchos de Taos, New Mexico, armed with a knife that he pointed at the store clerk. He was apprehended approximately one month later, and a state criminal complaint was filed on April 17, 2001, in the Taos County, New Mexico, Magistrate Court. The complaint charged in pertinent part: “Count 2 — Aggravated Assault — [Rede-Mendez] [d]id unlawfully assault or strike at another to wit: Jessica Grimes [the store clerk], with a deadly weapon to wit: a knife, contrary to Section 30-3-2A, N.M.S.A.1978 (Fourth Degree Felony).” It was sworn to under oath by a state police officer, with a statement of probable cause affixed to it.
In May 2001, a four-count criminal information was filed in the Eighth Judicial District Court for the County of Taos, New Mexico. Count 2 of the information charged Rede-Mendez with aggravated assault (deadly weapon) and alleged that “on *561 or about the 10th day of March, 2001, in Taos County, New Mexico, the above-named defendant did unlawfully assault or strike at Jessica Grimes with a knife, a deadly weapon or an instrument or object which, when used as a weapon, could cause death or very serious injury, contrary to N.M.S.A.1978 § 30-3-2(A) (1963) (A fourth degree felony).” On July 11, 2001, RedeMendez entered into a plea agreement and pled guilty to Count 2 of the information. The district court approved the plea agreement and, based on Rede-Mendez’s plea, stated in its opinion that “there exists a basis in fact for believing the defendant is guilty of the offenses charged and that an independent record for such factual basis has been made.” On July 13, 2001, the court sentenced Rede-Mendez to eighteen months of incarceration followed by one year of parole, suspended upon the condition that he was to remain in custody for a thirty-day period to allow the INS to deport him to his native country of Mexico. The judgment of conviction reiterated that Rede-Mendez “is convicted and stands guilty of the crime as charged in Count 2 of the Criminal Information of: AGGRAVATED ASSAULT (DEADLY WEAPON), contrary to N.M.S.A.1978, § 30-3-2(A) (1963) (A fourth degree felony).”
Following his deportation and illegal return to the United States, Rede-Mendez was arrested by Michigan authorities in 2010 for operating under the influence of alcohol, a charge that flagged his illegal status and led to his federal indictment on one count of reentry of an illegal alien following deportation for an aggravated felony conviction, 8 U.S.C. § 1326(a). In August 2010, he pled guilty to the offense without a plea agreement. Over RedeMendez’s objection, the district court held that his 2001 New Mexico conviction for aggravated assault (deadly weapon) constituted a “crime of violence” so as to warrant a sixteen-level sentencing enhancement pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii). Despite the enhancement, the district court ultimately imposed a below-Guidelines sentence of 36 months of imprisonment because Rede-Mendez was a deportable alien and the court could not achieve the rehabilitative purposes of sentencing.
II.
In order to constitute a “crime of violence” under U.S.S.G. § 2L1.2(b)(1)(A)(ii), Rede-Mendez’s offense must qualify as one of the enumerated offenses — in this case, aggravated assault — “or ... ha[ve] as an element the use, attempted use, or threatened use of physical force against the person of another.” U.S.S.G. § 2L1.2 cmt. n.1(B)(iii) (Nov. 2011) (emphasis added). This definition is disjunctive; thus, a prior felony conviction is a crime of violence if it meets either one of these criteria.[1] United States v. Palomino Garcia, 606 F.3d 1317, 1326 (11th Cir.2010); United States v. Rivera-Oros, 590 F.3d 1123, 1126 (10th Cir.2009).
In Leocal v. Ashcroft, 543 U.S. 1, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004), the Supreme Court addressed the definition of “crime of violence” set forth in 18 U.S.C. § 16(a), which is identical in all relevant respects to the language of the element prong of § 2L1.2, cmt. n.1(B)(iii),[2] and de *562 termined that the phrase “use of physical force” connotes “active employment” and thus refers only to crimes that carry “a higher degree of intent than negligence or merely accidental conduct.” Id. at 9, 125 S.Ct. 377. In the wake of the Leocal decision, we, and the majority of our sister circuits, have extended its rationale and held that crimes requiring only recklessness do not constitute crimes of violence or violent felonies under the element prongs of § 16(a), the ACCA, or § 2L1.2. See United States v. McMurray, 653 F.3d 367, 374-75 (6th Cir.2011); United States v. McFalls, 592 F.3d 707, 716 (6th Cir.2010); United States v. Baker, 559 F.3d 443, 453 (6th Cir.2009); United States v. Portela, 469 F.3d 496, 499 (6th Cir.2006); see also United States v. Zuniga-Soto, 527 F.3d 1110, 1124 (10th Cir.2008) (and cases cited therein).
In a subsequent decision, the Supreme Court addressed the degree of physical force necessary to qualify as a violent felony under the ACCA and applied Leocal’s reasoning to hold that “the phrase ‘physical force’ [under the ACCA] means violent force — that is, force capable of causing physical pain or injury to another person.” Johnson v. United States, — U.S. -, 130 S.Ct. 1265, 1271, 176 L.Ed.2d 1 (2010); see also McMurray, 653 F.3d at 374.
“In determining the nature of a prior conviction, we are to apply a ‘categorical’ approach, looking to the statutory definition of the offense and not the particular facts underlying the conviction.” McMurray, 653 F.3d at 372 (citing Taylor v. United States, 495 U.S. 575, 600, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990)). “If it is possible to violate the statute in a way that would constitute a [violent felony or crime of violence] and in a way that would not, the court may [utilize a modified-categorical approach and] consider the indictment, guilty plea, or similar documents to determine whether they necessarily establish the nature of the prior conviction.” Id. (citing Shepard v. United States, 544 U.S. 13, 26, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), and United States v. Gibbs, 626 F.3d 344, 352 (6th Cir.2010)). “In a pleaded case, the documents must demonstrate that the plea ... necessarily rested on the fact identifying the [crime as a qualifying offense].” Id. at 377 (citation and internal quotation marks omitted). “[T]wo types of proof ... that might suffice to establish that a plea ‘necessarily rested on the elements of a predicate offense [are]: (i) proof that the defendant admitted to predicate conduct when confirming the factual basis for a valid plea; [and] (ii) proof that the charge was narrowed to include only predicate conduct.” Id. at 378 (citation and internal quotation marks omitted).
The New Mexico statute at issue defines “aggravated assault” with a deadly weapon as: “(A) unlawfully assaulting or striking at another with a deadly weapon; (B) committing assault by threatening or menacing another while wearing a mask, hood, robe or other covering upon the face, head or body, or while disguised in any manner, so as to conceal identity; or (C) willfully and intentionally assaulting another with intent to commit any felony.” N.M. Stat. § 30-3-2. An aggravated assault by use of a deadly weapon requires only general criminal intent. State v. Bachicha, 111 N.M. 601, 808 P.2d 51, 54 (N.M.Ct.App.1991).
An “assault” is further defined by New Mexico statute as: “(A) an attempt to commit a battery upon the person of another; (B) any unlawful act, threat or menacing *563 conduct which causes another person to reasonably believe that he is in danger of receiving an immediate battery; or (C) the use of insulting language toward another impugning his honor, delicacy or reputation.” N.M. Stat. § 30-3-1.
The New Mexico courts have held that the crime of aggravated assault with a deadly weapon may occur under either of two theories: an assault by attempted battery with a deadly weapon, consistent with § 30 — 3—1(A); or by engaging in threatening or menacing conduct with a deadly weapon which causes the victim to believe that he or she was about to receive a battery — so-called “apprehension causing” aggravated assault, see Silva, 608 F.3d at 669 — consistent with § 30-3-1 (B). Bachicha, 808 P.2d at 54; State v. Woods, 82 N.M. 449, 483 P.2d 504, 505 (N.M.Ct.App.1971); State v. Anaya, 79 N.M. 43, 439 P.2d 561, 562-63 (N.M.Ct.App.1968); N.M. U.J.I. (New Mexico Uniform Jury Instructions) 14-304 through 14-306.[3] See also Silva, 608 F.3d at 669 (discussing the two theories); cf. United States v. Hammons, No. CR 07-1164 JB, 2010 WL 4321693, at *20 (D.N.M. Oct. 6, 2010) (also discussing the two theories in the context of New Mexico’s similar offense of aggravated assault against a family member with a deadly weapon).
As common and legal sense would dictate, the New Mexico courts do not recognize a theory of aggravated assault with a deadly weapon arising from “the use of insulting language toward another impugning his honor, delicacy or reputation” under Subsection (C) of New Mexico’s simple assault statute, § 30-3-l(C).
In the present case, it is clear from the relevant state-court documents that RedeMendez was charged under N.M. Stat. 30-3-2(A). Regardless of whether the New Mexico offense of aggravated assault by use of a deadly weapon fits within the generic definition of “aggravated assault,” Rede-Mendez’s prior conviction under § 30-3-2(A) qualifies as a crime of violence because under either the attempted battery or apprehension causing theories of aggravated assault, it “has as an element the use, attempted use, or threatened use of physical force against the person of another,” as the Fifth and Tenth Circuits have held in Licon-Nunez and Silva, respectively.
In Licon-Nunez, the Fifth Circuit employed the categorical approach to conclude that the defendant’s prior conviction for aggravated assault with a deadly weapon under § 30-3-2 was a crime of violence under § 2L1.2’s element prong. Licon *564 Nunez, 230 Fed.Appx. at 451. Because Licon-Nunez’s indictment tracked the language of § 30-3-2(A),[4] the court construed the requisite elements of the offense as “(1) the unlawful assaulting or striking at another and (2) the use of a deadly weapon,” with the first element specifically requiring that the defendant tried to and intended to touch or apply force to the victim while acting in a rude, insolent, or angry manner. Id. (citing N.M. U.J.I. 14-304). The court rejected Licon-Nunez’s argument that the offense does not require an element of the threatened use of physical force because it can be committed by means of offensive touching rather than by the application of force:
We have recently held that the offensive touching of an individual with a deadly weapon creates a sufficient threat of force to qualify as a crime of violence. [.United States v.] Dominguez, 479 F.3d [345, 348 (5th Cir.2007) ]. In Dominguez, the Court considered whether the Florida offense of aggravated battery by use of a deadly weapon, which can be committed via the intentional touching of a victim with a deadly weapon, was a crime of violence. The Court determined that even though an intentional touching with a deadly weapon might not itself cause injury, as required for an actual use of force, “it could lead to more violent contact, or could at least put the victim on notice of the possibility that the weapon will be used more harshly in the future, thereby constituting a threatened use of force.” Id. at 349. We think the same may be said of the New Mexico crime of aggravated assault by use of a deadly weapon. While the New Mexico crime differs from the crime in Dominguez because the former does not require an actual touching, the attempt to offensively touch a victim with a deadly weapon combined with the intent to do the same is enough to give rise to a threatened use of force under the reasoning in Dominguez. Thus, Licon-Nunez’s conviction for aggravated assault by use of a deadly weapon qualifies as a crime of violence warranting a sentence enhancement under § 2L1.2.
Id. at 452.
In Silva, a panel majority of the Tenth Circuit reached a similar conclusion with regard to § 30-3-2(A), holding that the defendant’s prior conviction for “apprehension causing” aggravated assault with a deadly weapon qualified as a “violent felony” under the ACCA. Silva, 608 F.3d at 670. The underlying New Mexico indictment alleged that Silva “did unlawfully assault or strike at [the victim], with a firearm, which was a deadly weapon.” Id. at 669 n. 3 (citation omitted). Silva entered a plea of no contest to the charge pursuant to a written plea agreement. Id. At his sentencing on federal charges of possession of a firearm after conviction of a felony, the district court imposed the ACCA’s fifteen-year mandatory minimum sentence enhancement based on its finding that the aggravated assault conviction had as an element the use or threatened use of physical force and, therefore, qualified as a violent felony. The Tenth Circuit affirmed the district court’s decision.
The Silva court characterized the crime as “apprehension causing” aggravated assault, which ‘“requires proof that [the] defendant threatened or engaged in menacing conduct with a deadly weapon toward a victim, causing the victim to believe he or she was about to be in danger of *565 receiving an immediate battery/ ” the use of a deadly weapon, and proof of general criminal intent. Id. at 670 (quoting Bachicha, 808 P.2d at 54).[5] Considering these elements together, the court held that § 30-3-2(A) involves active violent force:
“[A]pprehension causing” aggravated assault in New Mexico includes as an element the threatened use of “force capable of causing physical pain or injury to another person.” See Johnson, 130 S.Ct. at 1271. Threatening or engaging in menacing conduct toward a victim, with a weapon capable of producing death or great bodily harm, threatens the use of “violent force” because by committing such an act, the aggressor communicates to his victim that he will potentially use “violent force” against the victim in the near-future. Additionally, “apprehension causing” aggravated assault threatens the use of “violent force” because the proscribed conduct always has the potential to lead to “violent force.”
Id. at 670-71.
The Silva court drew support for its conclusion from a line of cases, including Licon-Nunez, which have held that analogous offenses constitute crimes of violence under the element prong of § 2L1.2(b)(l)(A)(ii). See id. at 671-72 (discussing Licon-Nunez, Dominguez, and United States v. Treto-Martinez, 421 F.3d 1156 (10th Cir.2005)). Indeed, the court noted that Licon-Nunez involved “the same subsection under which Silva was convicted.” Id. at 672.
In addition, the Silva court held that § 30-3-2(A) satisfied the mens rea requirement. It rejected Silva’s argument that because aggravated assault is a general intent crime and lacks as a requirement the defendant’s specific intent to induce fear in the victim, it did not satisfy the ACCA’s element prong. Id. at 673-74. Specifically, Silva argued that the Supreme Court’s decision in Leocal and the Tenth Circuit’s decision in Zuniga-Soto imposed the additional requirements that only crimes involving intentional conduct, not merely recklessness, can qualify as violent felonies under the element prong of the ACCA. Id. at 672. However, acknowledging that the ACCA only encompasses intentional conduct, the Silva court nonetheless held that the commission of apprehension causing aggravated assault in New Mexico requires proof that the defendant acted “intentionally,” not recklessly or negligently:
[Tjhis argument ... ignores Silva’s plea of no contest to aggravated assault, which was an admission of intentional conduct. “Apprehension causing” aggravated assault requires proof of general criminal intent, which New Mexico courts have consistently “defined as conscious wrongdoing or the purposeful doing of an act that the law declares to be a crime.” State v. Campos, [122 N.M. 148, 921 P.2d 1266, 1277 n. 5 (N.M.1996) ].... Silva concedes as much in his brief when he states that in a prosecution for “apprehension causing” aggravated assault, New Mexico’s Uniform Jury Instruction for general criminal intent requires a jury to find beyond a reasonable doubt that “the defendant acted intentionally when he committed the crime.” N.M. U.J.I. 14-141. That aggravated assault does not require proof of a specific intent to assault the victim, State v. Manus, [93 N.M. 95, 597 *566 P.2d 280, 284 (N.M.1979) ], overruled on other grounds by Sells v. State, [98 N.M. 786, 653 P.2d 162, 164 (N.M.1982) ][,] ... or of a specific “intent [ ] to injure or even frighten” the victim, State v. Morales, [132 N.M. 146, 45 P.3d 406, 414 (2002) ], only confirms that aggravated assault is not a specific intent crime, but rather is a general intent crime. The presence or absence of an element of specific intent does not dispositively determine whether a prior conviction qualifies as a violent felony under the ACCA. Because Silva admitted to engaging in conduct constituting the threatened use of physical force, and admitted to engaging in that conduct intentionally, his aggravated assault conviction qualifies as a violent felony.
* * *
[Ajpprehension-causing aggravated assault requires proof of more than the display of dexterity in handling a weapon; the crime requires proof that a defendant purposefully threatened or engaged in menacing conduct toward a victim, with a weapon capable of producing death or great bodily harm. See Bachicha, 808 P.2d at 54. We conclude that this intentional conduct threatens the use of physical force against the person of another, and therefore qualifies as a violent felony under the ACCA.
Id. at 673-74 (citations and internal quotation marks omitted).[6]
Thus, under § 30-3-2(A), Silva could not have been convicted for merely reckless behavior. See also Hammons, 2010 WL 4321693, at *20-21 (citing Silva and holding that the defendant’s prior conviction under a similar but not identical New Mexico statute — aggravated assault statute on a family member using a deadly weapon § 30-3-13(A)(2) — constituted a violent felony under the element prong of the ACCA). Cf. United States v. Romo-Villalobos, 674 F.3d 1246, 1251 (11th Cir.2012) (holding that the defendant’s prior Florida conviction for resisting an officer with violence was a crime of violence under § 2L1.2(b)(l)(A)(ii) because the use of more than de minimis physical force or violence was a necessary element of the offense and “Florida’s general intent crimes plainly require something more than recklessness”); United States v. King, 673 F.3d 274, 279-80 (4th Cir.2012) (holding that the defendant’s South Carolina conviction for pointing and presenting a firearm required that the offender point, present, or show the firearm at another in a threatening manner and therefore qualifies as a crime of violence under U.S.S.G. § 4B1.2(a)(l)); United States v. Luna, 649 F.3d 91, 108-09 (1st Cir.2011) (holding that the version of a Massachusetts armed robbery statute involving threatening words or gestures has as an element the threat of violent physical force necessary to satisfy the definition of “vio *567 lent felony” under the ACCA); United States v. Melchor-Meceno, 620 F.3d 1180, 1184 (9th Cir.2010) (holding that Colorado felony menacing statute “is categorically a crime of violence under the element prong of U.S.S.G. § 2L1.2. The nature of the force required ... is in the category of violent active crimes, because it penalizes imminent serious bodily injury, rather than minimal, non-violent touching, and necessarily involves a threat to physical safety, rather than general safety. Furthermore, the predicate offense of menacing, a general intent crime, includes the requisite mens rea of intent for a crime of violence. It requires the defendant to knowingly place another person in fear of an imminent serious bodily harm.”); United States v. Pulliam, 566 F.3d 784, 788 (8th Cir.2009) (“It goes without saying that displaying an operational weapon before another in an angry or threatening manner [in violation of Missouri’s crime of unlawful use of a weapon] qualifies as threatened use of physical force against another person.”).
The Licon-Nunez and Silva decisions provide very persuasive authority supporting the district court’s application of the sixteen-level enhancement in the present case on the basis that a prior conviction under N.M. Stat. 30-3-2(A) is categorically a “crime of violence” under the element prong of § 2L1.2. Although our court has not yet addressed whether such a general intent crime includes the requisite mens rea of intent to be deemed a crime of violence or violent felony, I am persuaded by the Fifth and Tenth Circuits’ reasoning with regard to N.M. Stat. § 30-3-2(A). By its plain language — “assaulting or striking at another with a deadly weapon” — Subsection (A) unambiguously includes as an inherent element “the use, attempted use, or threatened use of physical force against another person” and precludes the possibility that the crime was committed with the insufficient mens rea of mere recklessness. Whether RedeMendez committed this offense under the attempted battery theory or the apprehension causing theory of aggravated assault recognized by the New Mexico courts, the result is the same — the requirement of general intent, combined with the affirmative use of a deadly weapon, renders the New Mexico crime of aggravated .assault with a deadly weapon under § 30-3-2(A) sufficiently active and violent to qualify as a crime of violence.
The majority’s contrary conclusion rests on the flawed assumption that Rede-Mendez’s prior conviction may have been based on the use of “insulting language toward another impugning his honor, delicacy or reputation” under Subsection (C) of the simple assault statute, § 30-3-l(C), which would not satisfy the requirements of Leo-cal or Johnson. The majority acknowledges that “Rede-Mendez does not contend that his aggravated-assault conviction was based on the use of insulting language,” but nonetheless holds that under the categorical approach, “[without any indication as to whether Rede-Mendez’s aggravated-assault conviction ... could have involved the threatened use of physical force, we cannot conclude that RedeMendez committed a crime of violence.”
However, as the majority further acknowledges, “we are bound by a state court’s interpretation of state criminal law, including the elements of a crime[.]” (citing United States v. Rodriguez, 664 F.3d 1032, 1037 (6th Cir.2011)). As I have detailed above, the New Mexico courts recognize only two theories of aggravated assault— conforming to subsections (A) and (B) of § 30-3-1. Thus, the majority’s suggested possibility that Rede-Mendez pled guilty to aggravated assault under the “insulting language” theory of § 30-3-1(C) has no basis in New Mexico law. By pleading *568 guilty to aggravated assault with a deadly weapon under § 30-3-2(A), Rede-Mendez’s conviction satisfied the element prong of § 2L1.2 cmt. n.l(B)(iii) so as to validate the district court’s imposition of the sixteen-level sentencing enhancement.
III.
For these reasons, I would affirm and therefore respectfully dissent.

. The second criterion is henceforth referred to as the "element prong.”

. In light of the identical language used in the element prongs of the career offender guideline (U.S.S.G. § 4B1.2(a)(1)), Armed Career Criminal Act ("ACCA”) (18 U.S.C. § 924(e)(2)(B)(i)), 18 U.S.C. § 16(a), and U.S.S.G. § 2L1.2 cmt. n.l(B)(iii), to define "violent felony” and "crime of violence,” we "have taken the position that authority interpreting one phrase is generally persuasive when interpreting the other.” United States *562 v. Vanhook, 640 F.3d 706, 712 n. 4 (6th Cir.2011); see also United States v. McMurray, 653 F.3d 367, 371 n. 1, 373-74 (6th Cir.2011).

. N.M. U.J.I. 14-306 sets forth the elements of these two theories:
For you to find the defendant guilty of aggravated assault by use of a deadly weapon [as charged in Count_], the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
1. The defendant tried to touch or apply force to_(name of victim) by;
2. The defendant acted in a rude, insolent or angry manner;
3. The defendant intended to touch or apply force to_(name of victim) by; OR
1.The defendant _ (describe unlawful act, threat or menacing conduct)',
2. The defendant’s conduct caused _ (name of victim) to believe the defendant was about to intrude on _'s (name of victim) bodily integrity or personal safety by touching or applying force to_(name of victim) in a rude, insolent or angry manner;
3. A reasonable person in the same circumstances as_(name of victim) would have had the same belief;
AND
4. The defendant used a [_] deadly weapon. The defendant used a_(name of object). A _ (name of object) is a deadly weapon only if you find that a_ (name of object), when used as a weapon, could cause death or great bodily harm[.]

. The indictment charged that Licon-Nunez "did assault or strike at Cesar Esparza with a deadly weapon, to wit: a knife, a fourth degree felony contrary to Section 30-3-2A NMSA 1978.” Id. at 451.

. Although Silva’s state-court plea agreement did not describe the assault and the record did not contain the plea colloquy, in focusing its analysis on this theory, the court noted that the New Mexico indictment tracked the statutory language of § 30-3-2(A), and Silva’s sentencing challenge centered upon this theory. Id. at 669 n. 3, 670.

. In so concluding, the court expressly declined to further expand Leocal's holding:
The dissent would conclude that Silva's aggravated assault conviction is not a violent felony, and would extend Leocál and Zuniga-Soto to conclude that crimes have as an element the "threatened use of physical force against the person of another” only if they proscribe "conduct performed with an intent to induce fear.” [Silva, 608 F.3d at 676 (Hartz, J., dissenting)]. But Leocál cannot be read as definitively supporting that extension. That case resolved an issue very different from the one we face here: whether state DUI offenses, "which either do not have a mens rea component or require only a showing of negligence in the operation of a vehicle,” have as an element the use of physical force against the person of another, 543 U.S. at 6, 125 S.Ct. 377. In resolving that issue, the Court made clear that it "d[id] not deal ... with an attempted or threatened use of force.” Id. at 8-9, 125 S.Ct. 377 (emphasis in original).
Silva, 608 F.3d at 673-74.