**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**September 7, 2005**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

PABLO TRETO-MARTINEZ, aka
Pablo Treto-DeLaTorre, aka Juan
Martinez-DeLaCruz,

      Defendant-Appellant.

No. 04-1185

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 03-CR-499-MK)**

---

Submitted on the briefs:[*]

Scott T. Varholak, Assistant Federal Public Defender, and Raymond P. Moore, Federal Public Defender, Denver, Colorado, for Defendant-Appellant.

Jerry N. Jones, Assistant U.S. Attorney, and William J. Leone, United States Attorney, Denver, Colorado, for Plaintiff-Appellee.

---

Before **SEYMOUR**, **LUCERO** and **O'BRIEN**, Circuit Judges.

---

[*]At the parties' request, the case is unanimously ordered submitted without oral argument pursuant to Fed. R. App. P. 34(f) and 10th Cir. R. 34.1(G).

**LUCERO**, Circuit Judge.

Having pled guilty to unlawful reentry by a deported alien removed subsequent to commission of an aggravated felony, Pablo Treto-Martinez contests his sentence and requests resentencing in light of United States v. Booker, 125 S. Ct. 738 (2005). At issue is whether his prior conviction in Kansas for aggravated battery against a law enforcement officer constitutes a "crime of violence" under U.S.S.G. § 2L1.2(b)(1)(A) or an "aggravated felony" under U.S.S.G. § 2L1.2(b)(1)(C). The district court found that Treto-Martinez's prior conviction met the definition for enhancements under either provision, and on appeal we agree with the district court's finding with regard to the enhancement under § 2L1.2(b)(1)(A), and **AFFIRM** Treto-Martinez's sentence.

## I

Treto-Martinez was removed from the United States to Mexico on July 1, 1997 pursuant to an order by an immigration judge, and subsequently reentered the United States. After he was arrested in Colorado on charges of driving under the influence and having an outstanding warrant, he was indicted for unlawful reentry by a deported alien whose removal was subsequent to commission of an aggravated felony in violation of 8 U.S.C. § 1326(a) and (b)(2). Although he contested the government's characterization of a prior Kansas conviction for

- 2 -

aggravated battery on a law enforcement officer as a "crime of violence" or "aggravated felony," Treto-Martinez pled guilty, and reserved his right to challenge the issue of the proper characterization of his prior conviction for sentencing purposes.

At sentencing, the Pre-Sentence Report ("PSR") found that his criminal history category was V, the total offense level was 21, and the applicable sentencing range was 70-87 months. Adopting the PSR's recommendation, the district court found that his prior conviction under Kan. Stat. Ann. § 21-3415 satisfied the Sentencing Guidelines definitions for both a "crime of violence" under U.S.S.G. § 2L1.2(b)(1)(A) and "aggravated felony" under U.S.S.G. § 2L1.2(b)(1)(C). Treto-Martinez objected to these characterizations of his prior conviction. The district court rejected his argument, and imposed a 70-month sentence followed by three years of supervised release. Treto-Martinez now appeals his sentence.

## II

We review de novo a district court's interpretation of the Sentencing Guidelines and its determination that a prior offense is an "aggravated felony" or a "crime of violence." United States v. Venegas-Ornelas, 348 F.3d 1273, 1274 (10th Cir. 2003); United States v. Holbert, 285 F.3d 1257, 1259 (10th Cir. 2002).

Two provisions of the Sentencing Guidelines that the district court applied to Treto-Martinez are at issue in this appeal. The first, § 2L1.2(b)(1)(A) requires a district court to impose a sixteen-level enhancement if the defendant has been previously convicted of, inter alia, "a crime of violence." Application Note 1(B)(iii) defines "crime of violence" as:

> [A]ny of the following: murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

§ 2L1.2(b)(1). A second provision, § 2L1.2(b)(1)(C), requires a district court to impose an eight-level sentencing enhancement if the defendant has been previously convicted of an aggravated felony. Application Note 3(A) instructs that the term "aggravated felony" has the meaning given that term in 8 U.S.C. § 1101(a)(43), which in addition to referencing specific offenses, further directs courts to define a crime of violence with a term of imprisonment of at least one year according to 18 U.S.C. § 16. 8 U.S.C. § 1101(a)(43). That provision defines "crime of violence" as:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

§ 16.

Finally, the Guidelines instruct a district court to impose the greater enhancement, if applicable, for a prior conviction of "a crime of violence" (sixteen levels) instead of the enhancement for a prior conviction for an "aggravated felony" (eight levels). § 2L1.2(b)(1). The district court found that both provisions apply to Treto-Martinez's prior conviction. Because we conclude that a prior conviction for "aggravated battery against a law enforcement officer" under Kan. Stat. Ann. § 21-3415 constitutes a crime of violence, our inquiry therefore begins and ends with the district court's imposition of a sixteen-level enhancement under § 2L1.2(b)(1)(A).

Treto-Martinez pled guilty to § 21-3415 at a felony level 6 which directs that aggravated battery against a law enforcement officer is "an aggravated battery, as defined in subsection (a)(1)(B) or (C) of K.S.A. 21-3414 and amendments thereto, committed against a uniformed or properly identified state, county or city law enforcement officer while the officer is engaged in the performance of the officer's duty." Turning to § 21-3414(a)(1)(B) and (a)(1)(C), aggravated battery is:

> (1)(B) intentionally causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted; or
> (1)(C) intentionally causing physical contact with another person when done in a rude, insulting or angry manner with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted.

Kan. Stat. Ann. § 21-3414(a)(1)(B) and (a)(1)(C).

Because the charging documents do not specify the subsection to which he pled guilty, Treto-Martinez argues that we can affirm the district court only if both subsections – § 21-3414(a)(1)(B) and (a)(1)(C) – constitute crimes of violence. Treto-Martinez contends that the statute to which he pled is ambiguous as to the precise conduct required for conviction, and consequently he could have pled to "causing physical contact with another person when done in a rude, insulting or angry manner with a deadly weapon," which would not be sufficient to sustain a finding that he had been convicted of a "crime of violence" pursuant to U.S.S.G. § 2L1.2(b)(1)(A). For purposes of a "crime of violence" enhancement, we must find that subsection (a)(1)(C) contains as an element "the use, attempted use or threatened use of physical force against the person of another." § 2L1.2(b)(1).

There is no dispute that subsection (a)(1)(B) contains the requisite language to support a finding that Treto-Martinez's conviction was for a "crime of violence." Accordingly, the government urges us to conclude that the conduct detailed in the charging documents demonstrate that Treto-Martinez pled guilty to Kan. Stat. Ann. § 21-3414(a)(1)(B). Treto-Martinez agrees that § 21-3414(a)(1)(B) would support a finding that he had been convicted of a crime of violence, but argues that the charging documents can only support a finding that he pled guilty to § 21-3414(a)(1)(C), which he contends does not constitute a

"crime of violence" for U.S.S.G. § 2L1.2(b)(1)(A) purposes.  When ambiguity

exists with regard to the statute, we would ordinarily look to the charging

documents and judgment of conviction to determine which statutory provision

supports a defendant's plea of guilty.  Venegas-Ornelas, 348 F.3d at 1275; United

States v. Zamora, 222 F.3d 756, 764 (10th Cir. 2000).  However, because we

conclude that either subsection of § 21-3414 – (a)(1)(B) or (a)(1)(C) – supports a

finding that a defendant committed a "crime of violence" for purposes of

§ 2L1.2(b)(1)(A), we need not decide which provision Treto-Martinez's conduct

violated.

Under Kan. Stat. Ann. § 21-3414(a)(1)(C) aggravated battery occurs when a

person intentionally causes physical contact with another either with a deadly

weapon in "a rude, insulting or angry manner" or "in any manner whereby great

bodily harm, disfigurement or death can be inflicted."  § 21-3414(a)(1)(C).  In

order to apply a sentencing enhancement under § 2L1.2(b)(1)(A), a court must

find that an offense includes as an element the  "use, attempted use, or threatened

use of physical force."  Concerning the first disjunct of this statute which

proscribes contact with a deadly weapon, Kansas courts have defined "'deadly

weapon,' in the context of aggravated battery, as an instrument which, from the

manner in which it is used, is calculated or likely to produce death or serious

bodily injury." State v. Whittington, 926 P.2d 237, 241 (Kan. 1996) (quotation

omitted). First, we conclude that physical force is involved when a person intentionally causes physical contact with another person with a deadly weapon. Although not all physical contact performed in a rude, insulting or angry manner would rise to the level of physical force, we conclude that all intentional physical contact with a deadly weapon done in a rude, insulting or angry manner does constitute physical force under § 2L1.2(b)(1)(A). Thus, a person who intentionally touches another with a deadly weapon in a "rude, insulting or angry manner," uses physical force by means of an instrument calculated or likely to produce bodily injury which goes well beyond other, less violent, forms of touching such as grabbing a police officer's arm. Second, we conclude that a person who touches a police officer with a deadly weapon in "a rude, insulting or angry manner," has at the very least "threatened use of physical force" for purposes of § 2L1.2(b)(1)(A). Even if the physical contact does not produce bodily injury, the manner in which the physical contact with a deadly weapon must occur to violate the Kansas statute clearly has as an element the "threatened use of physical force." Causing physical contact with a deadly weapon in "a rude, insulting or angry manner," if not sufficient in itself to constitute actual use of physical force under § 2L1.2(b)(1)(A), could always lead to more substantial and violent contact, and thus it would always include as an element the "threatened

- 8 -

use of physical force." Physical contact with a deadly weapon under this statute will always constitute either actual or threatened use of physical force.

As to the other disjunct under § 21-3414(a)(1)(C) – "physical contact . . . whereby great bodily harm, disfigurement or death can be inflicted," – it is clear that a violation of this provision is also sufficient to satisfy § 2L1.2(b)(1)(A)'s meaning for "physical force." No matter what the instrumentality of the contact, if the statute is violated by contact that can inflict great bodily harm, disfigurement or death, it seems clear that, at the very least, the statute contains as an element the "threatened use of physical force." Thus, violation of Kan. Stat. Ann. § 21-3414(a)(1)(C) is entirely sufficient to constitute a "crime of violence" for purpose of a sixteen-level enhancement under § 2L1.2(b)(1)(A).

Because we conclude that a plea of guilty to § 21-3414(a)(1)(C) is sufficient to sustain the district court's finding that Treto-Martinez had a prior conviction for a "crime of violence," we need not address the additional issue of whether it also meets the definition for an "aggravated felony."

### III

While Treto-Martinez's appeal was pending, the Supreme Court issued its opinion in United States v. Booker, 125 S. Ct. 738 (2005), which held that when a district court, acting under the mandatory terms of the Sentencing Reform Act, enhances a sentence based on facts it alone finds, it violates a defendant's Sixth

Amendment right to have "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict . . . be admitted by the defendant or proved to a jury beyond a reasonable doubt." Id. at 756. Although the district court enhanced Treto-Martinez's sentence based on the fact of a prior conviction, which does not violate the Sixth Amendment, Treto-Martinez filed a supplemental brief arguing that he is entitled to relief under the remedial holding in Booker. Through its remedial holding, the Supreme Court excised those parts of the Sentencing Reform Act that make judicial fact-finding mandatory, and thereby rendered the Guidelines as a whole advisory and gave district courts discretion to tailor sentences in light of factors enumerated in 18 U.S.C. § 3553(a). Booker, 125 S.Ct. at 757 (requiring "a sentencing court to consider Guidelines ranges . . . but [permitting] the court to tailor the sentence in light of other statutory concerns as well"). Thus, Treto-Martinez seeks a remand for resentencing so that the district court can exercise its discretion in light of Booker's remedial holding.

Because Treto-Martinez did not object to the mandatory imposition of a Guideline's sentence in the court below, we review his claim for plain error. Booker, 125 S.Ct. at 769 ("we expect reviewing courts to apply ordinary prudential doctrines, determining, for example, whether the issue was raised below and whether it fails the 'plain-error' test."). Before we will correct an

- 10 -

error not raised at trial, Treto-Martinez must establish that the district court committed "(1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Gonzalez-Huerta, 403 F.3d 727, 732 (10th Cir. 2005) (en banc) (citing United States v. Burbage, 365 F.3d 1174, 1180 (10th Cir. 2004)); see also United States v. Olano, 507 U.S. 725, 732 (1993).

We have recently held that non-constitutional error occurs when the district court treats the Guidelines as mandatory. Gonzalez-Huerta, 403 F.3d at 731-32. Moreover, we held that an error is plain when, as is the case in the present appeal, the error is clear at the time of the appeal. Id. at 732. Because an Appellant must satisfy all four conditions under plain error review, we do not address whether the district court's error affects Treto-Martinez's substantial rights. Instead we follow our fourth prong analysis in Gonzalez-Huerta and conclude that Treto-Martinez fails to meet his burden to show that failure to correct a non-constitutional error affects the fairness, integrity, or public reputation of judicial proceedings. See also United States v. Cotton, 535 U.S. 625, 632-33 (2002).

"[W]e will not notice a non-constitutional error, such as the one in the case before us, unless it is both 'particularly egregious' and our failure to notice the error would result in a 'miscarriage of justice.'" Gonzalez-Huerta, 403 F.3d at

- 11 -

736. Treto-Martinez has the burden of demonstrating that failure to recognize the district court's error is "particularly" egregious. Id. His argument is as follows:

> The Court's interpretation of the fourth prong of plain-error review prohibits recognition of plain error when the evidence of guilt on the challenged point is 'overwhelming' and 'essentially uncontroverted.' This test is simply inapposite, given Booker's advisory approach to sentencing. The error in having been sentenced under an unconstitutional mandatory Guidelines scheme surely 'seriously affects the fairness, integrity, or public reputation of judicial proceedings,' and therefore requires a remand for resentencing.

Appellant Supp. Br. at 9-10 (citations omitted).

We rejected this form of argument in Gonzalez-Huerta, 403 F.3d at 737-38. We also rejected the claim that non-constitutional Booker error constituted structural error. Id. at 734. Moreover, we reasoned that non-constitutional error is not the substantive infirmity which Booker alleviates, and that it only implicates Booker's remedy, not its diagnosis. Id. at 737-38. Accordingly, where a sentence falls within the national norm, where a defendant does not present argument that consideration of § 3553(a) factors would warrant a departure, and where there is no evidence that the district court felt constrained or was otherwise displeased with the sentence the Guidelines required the court to impose, we have held that mandatory application of the Guidelines is not particularly egregious or a miscarriage of justice. Id. at 738; cf. United States v. Trujillo-Terrazas, 405 F.3d 814, 821(10th Cir. 2005) (concluding fourth prong met where sixteen level enhancement for arson was based on throwing a lighted match through a car

window causing $35 in damages); <u>United States v. Williams</u>, 403 F.3d 1188, 1198 (10th Cir. 2005) (concluding fourth prong met where district court expressed its disagreement with the Guidelines sentence, for example, stating "I think that the sentence I'm about to impose is so grossly out of proportion to the offense conduct here."). Treto-Martinez makes no such arguments, and relies merely on the fact that his sentence was imposed according to mandatory sentencing Guidelines. Moreover, on our review of the record, we find no other grounds to support a claim that fundamental fairness is implicated by allowing his sentence to stand. Because our holding in <u>Gonzalez-Huerta</u> explicitly rejects the arguments Treto-Martinez advances, we must deny his request for resentencing.

**IV**

We hold that a defendant's prior conviction for aggravated battery against a law enforcement officer pursuant to Kan. Stat. Ann. § 21-3415 is a crime of violence under U.S.S.G. § 2L1.2(b)(1)(A). We also hold that Treto-Martinez's <u>Booker</u> challenge fails to satisfy plain-error review. Accordingly, we **AFFIRM** Treto-Martinez's sentence.