FILED
United States Court of Appeals
Tenth Circuit

June 14, 2010

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JACOB RAMON SILVA,

    Defendant-Appellant.

No. 09-2035

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. 1:CR–07-00787-JEC-1)**

---

John V. Butcher, Assistant Federal Public Defender, Office of Federal Public Defender, Albuquerque, New Mexico, for Defendant-Appellant.

Laura Fashing, Assistant United States Attorney (Gregory J. Fouratt, United States Attorney, with her on the brief), Albuquerque, New Mexico, for Plaintiff-Appellee.

---

Before **BRISCOE,** Chief Judge, **BALDOCK** and **HARTZ**, Circuit Judges.

---

**BRISCOE**, Chief Judge.

---

Defendant-Appellant Jacob Ramon Silva appeals the district court's

determination that his prior New Mexico convictions for burglary under N.M Stat.

§ 30-16-3(B) and aggravated assault under N.M. Stat. § 30-3-2(A) qualify as

violent felonies under the Armed Career Criminal Act, 18 U.S.C. § 924(e) ("ACCA"). Exercising jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm.

I

A grand jury empaneled by the United States District Court for the District of New Mexico issued an indictment against Silva, charging him with possession of a firearm and ammunition after conviction of a felony in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Silva entered a plea of guilty pursuant to a written plea agreement.

A United States Probation Officer prepared a presentence report ("PSR") that recommended Silva should receive the ACCA's 15-year mandatory minimum sentence enhancement because he had three prior convictions that qualified as violent felonies under the ACCA. Those three qualifying convictions were a 1998 New Mexico conviction for robbery, a 1999 New Mexico conviction for burglary, and a 2006 New Mexico conviction for aggravated assault.

Silva filed written objections to the PSR, specifically contending that the latter two convictions were not violent felonies under the ACCA. Silva argued that the burglary conviction was not a violent felony because it was not burglary of a "structure" under the ACCA's generic definition of burglary that the Supreme Court enunciated in Taylor v. United States, 495 U.S. 575, 599 (1990). Silva also argued that the aggravated assault conviction was not a violent felony because

2

one way of committing the offense "requires no specific intent of the defendant;" rather, "the defendant can be convicted of reckless conduct if his menacing conduct caused the victim to believe that her bodily integrity or personal safety was to be intruded upon in a rude, insolent or angry manner." ROA Vol. 1 at 37.

The district court rejected Silva's arguments and sentenced him to 15 years' imprisonment, the minimum sentence required by the ACCA.

## II

The ACCA imposes a mandatory minimum term of 15 years' imprisonment for an individual convicted of being a felon in possession of a firearm if that individual has three prior convictions for a "violent felony or a serious drug offense, or both, committed on occasions different from one another . . . ." 18 U.S.C. § 924(e)(1). A "violent felony" under the ACCA is any crime punishable by a term of imprisonment exceeding one year that also

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another . . . .

Id. § 924(e)(2)(B). Whether a defendant's prior conviction qualifies as a violent felony under the ACCA is a question of law that we review de novo. United States v. Scoville, 561 F.3d 1174, 1176 (10th Cir. 2009).

3

*Burglary*

"[A] person has been convicted of burglary for purposes of a § 924(e) enhancement if he is convicted of any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." Taylor, 495 U.S. at 599.  In determining whether a defendant's prior conviction meets this generic definition of burglary, we employ a categorical approach that "look[s] only to the fact of conviction and the statutory definition of the prior offense." Id. at 602.  If the statutory definition of the prior conviction "substantially corresponds to 'generic' burglary," our inquiry is at an end. Id.  If the statutory definition of the prior conviction proscribes a range of conduct that is broader than generic burglary, we then employ a modified-categorical approach that "go[es] beyond the mere fact of conviction" and determines whether "the charging paper and jury instructions actually required the jury to find all the elements of generic burglary in order to convict the defendant." Id.  In cases not tried before a jury, we look to a "bench-trial judge's formal rulings of law and findings of fact . . . ." Shepard v. United States, 544 U.S. 13, 20 (2005).  In "pleaded cases" we look to "the statement of factual basis for the charge, shown by a transcript of plea colloquy or by a written plea agreement presented to the court, or by a record of comparable findings of fact adopted by the defendant upon entering the plea." Id. (internal citation omitted).

4

Silva's 1999 New Mexico burglary conviction was pursuant to N.M. Stat. § 30-16-3(B). Under that statute:

> Burglary consists of the unauthorized entry of any vehicle, watercraft, aircraft, dwelling or other structure, movable or immovable, with the intent to commit any felony or theft therein.
> A. Any person who, without authorization, enters a dwelling house with intent to commit any felony or theft therein is guilty of a third degree felony.
> B. Any person who, without authorization enters any vehicle, watercraft, aircraft or other structure, movable or immovable, with intent to commit any felony or theft therein is guilty of a fourth degree felony.

N.M. Stat. § 30-16-3. New Mexico courts have interpreted the phrase "other structure" in subsection B "to require an enclosure similar to a vehicle, watercraft, aircraft, or dwelling." State v. Foulenfont, 895 P.2d 1329, 1332 (N.M. Ct. App. 1995). Because N.M. Stat. § 30-16-3(B) contains a "non-generic" definition of burglary, United States v. King, 422 F.3d 1055, 1058 (10th Cir. 2005), we will employ a modified-categorical approach and examine Silva's charging document, plea agreement, and plea colloquy to determine "the character of [Silva's] admitted burglary," Shepard, 544 U.S. at 16.

Silva's 1999 burglary conviction stemmed from a three-count indictment that a New Mexico grand jury returned against him on June 17, 1999. The first count alleged:

> That on or about the 3rd day of December, 1998, in Bernalillo County, New Mexico, the above-named defendant *entered a structure, a shed,* located at 2024 Nancy SW, without authorization or permission, with intent to commit any felony or a theft therein, contrary to § 30-16-

5

3(B), NMSA 1978.

ROA Vol. 1 at 67 (emphasis added).  Silva entered a plea of guilty to that count

pursuant to a written plea agreement that did not describe the offense.  Id. at 70-

74.  During the plea colloquy, the State of New Mexico waived a factual basis for

the plea, and Silva consented to the waiver.[1]  Id. at 44-48.  Therefore, in applying

a modified categorical approach to Silva's burglary conviction, the question

becomes whether Silva's plea of guilty to the unauthorized entry of a "structure, a

shed," ROA Vol. 1 at 67, with the intent to commit a felony, "establishe[d] all the

elements of generic burglary," see Scoville, 561 F.3d at 1178.

Silva argues that his burglary conviction is not a violent felony under the

ACCA because the shed he burgled does not satisfy the "building or other

structure" element in generic burglary.  Silva argues that generic burglary

encompasses only those spaces that "(1) are designed for human habitation or

business; and (2) are permanent."  Aplt. Br. at 29.  Because Silva burgled a

simple tool shed that was capable of disassembly,[2] he therefore contends that he

_____

[1] The colloquy did reveal that the value of the stolen items was less than
$250, and that Silva pleaded guilty to the offense as an accomplice.

[2] In the district court, Silva submitted an affidavit from the owner of the
shed that described the shed as an "ordinary backyard tool or garden shed" that
was "not designed for human habitation but to store tools."  ROA Vol. 1 at 97.
The shed "was not a permanent structure" because it only had "a plywood board
floor," lacked a foundation, and after the burglary occurred the owner
"disassembled the shed, moved it to a different part of the yard, and reassembled
and expanded it."  Id. at 97-98.  Silva acknowledges that Taylor's categorical and
(continued...)

6

did not commit generic burglary.

In Taylor, the Supreme Court interpreted the meaning of the term "burglary" as it now appears in the ACCA. The ACCA as originally enacted in 1984 defined burglary as "any felony consisting of entering or remaining surreptitiously within a building that is property of another with intent to engage in conduct constituting a Federal or State offense." 495 U.S. at 581 (citation and quotation omitted). Because Congress deleted this definition when it amended the ACCA in 1986, the Supreme Court examined the ACCA's legislative history and considered the "range of possible meanings of the term 'burglary.'" Id. at 590. The Court eventually concluded that "Congress meant by 'burglary' the generic sense in which the term is now used in the criminal codes of most States." Id. at 598. "Although the exact formulations vary, the generic contemporary meaning of burglary contains at least the following elements: an unlawful or unprivileged

---

[2](...continued)
modified-categorical approaches "'generally' preclude[] an examination of the underlying facts of a conviction," but he argues that we may consider the affidavit as a means of proving the non-generic nature of N.M. Stat. §30-16-3(B). Aplt. Br. at 41.

We disagree. Demonstrating that "a state statute creates a crime outside the generic definition of a listed crime in a federal statute" requires proof of "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193 (2007). Though a defendant may use the facts of his own case to prove such a realistic probability, id., here the non-generic nature of N.M. Stat. § 30-16-3(B) is obvious, see King, 422 F.3d at 1058; Foulenfont, 895 P.2d at 1332. Thus, we recite the particularized characteristics of the shed only for the limited purpose of describing Silva's argument, and will not consider these facts in applying the modified-categorical approach.

entry into, or remaining in, a building or other structure, with intent to commit a crime." Id. The Court noted that its generic definition was "practically identical" to the deleted 1984 definition. Id.

In discussing this generic definition, the Court cited sections of W. LaFave & A. Scott, Substantive Criminal Law (1986), which indicated that modern statutes typically described the place of burglary as a building or structure. Id. The Court also noted in a footnote that its "usage approximates that adopted by the drafters of the Model Penal Code," which defined burglary as the entry of "a building or occupied structure, or separately secured or occupied portion thereof, with purpose to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter." Id. at 598 n.8 (citing Model Penal Code § 221.1 (1980)). Finally, the Court noted that some states had defined burglary more broadly than generic burglary by "including places, such as automobiles and vending machines, other than buildings." Id. at 599. A Missouri burglary statute, for instance, "included breaking and entering 'any booth or tent, or any boat or vessel, or railroad car.'" Id. (quoting Mo. Rev. Stat. § 560.070 (repealed)).

The Ninth Circuit has defined the "building or other structure" element of generic burglary to include only those "structure[s] designed for occupancy that [are] intended for use in one place." United States v. Grisel, 488 F.3d 844, 848 (9th Cir. 2007) (en banc). The crux of the Ninth Circuit's reasoning was the

8

following observation:

> One difference between the deleted 1984 statutory definition and the Court's generic definition in <u>Taylor</u> was the substitution of the term "building or structure" for the term "building." Careful analysis makes clear, however, that this difference was one of form, not substance. In using the term "building or structure," the Court encapsulated the common understanding of the word "building"–a structure designed for occupancy that is intended for use in one place.

<u>Id.</u> To support this construction, the Ninth Circuit consulted the version of the criminal law treatise the Supreme Court cited in <u>Taylor</u>, and generalized from the examples of places the Supreme Court said would not satisfy the "building or other structure" element of generic burglary. After consulting the treatise, the Ninth Circuit determined that "in the criminal codes of most states, the term 'building or structure' does not encompass objects that could be described loosely as structures but that are either not designed for occupancy or not intended for use in one place. It was this understanding of 'building or structure' that the Court adopted." <u>Id.</u> at 849. The Ninth Circuit drew further support from what <u>Taylor</u> said would not qualify as generic burglary, noting (1) <u>Taylor</u>'s explanation that some states had defined burglary to include places, "such as automobiles and vending machines, *other than buildings*," <u>id.</u> (quoting <u>Taylor</u>, 495 U.S. at 599) (emphasis in original), and (2) <u>Taylor</u>'s discussion of the Missouri burglary statute that included a "booth, tent, boat, vessel, or railroad car–objects that could be described loosely as structures but that are either not designed for occupancy or not intended for use in one place," <u>id.</u>

9

Silva essentially urges this court to narrow the Ninth Circuit's definition of "structure" in Grisel to only include those spaces that "(1) are designed for *human habitation or business*; and (2) are permanent." Aplt. Br. at 29 (emphasis added). In arguing for this result, Silva offers his own close reading of Taylor, interpretation of the ACCA's legislative history, and analysis of the contemporary sources that the Court cited in Taylor. We reject this argument, however, because the construction Silva urges is contrary to Supreme Court precedent, and is inconsistent with precedent from our own circuit.

Since deciding Taylor, the Supreme Court has indicated that the scope of the "building or other structure" element in generic burglary is broader than the construction the Ninth Circuit has adopted and the even narrower interpretation that Silva urges. In the introductory paragraph in Shepard, the Court stated that the ACCA "makes burglary a violent felony only if committed in a building *or enclosed space* ('generic burglary'), not in a boat or motor vehicle." Shepard, 544 U.S. at 15-16 (emphasis added). By replacing "other structure" with "enclosed space," the Supreme Court has indicated that the scope of generic burglary would encompass not only those spaces that are designed for occupancy and intended for use in one place, but also other, potentially less complete "enclosed spaces," so long as they do not resemble a boat, motor vehicle, or other mode of transportation. Notably, Grisel does not discuss Shepard's restatement of generic burglary, and Silva does not consider it in his briefings.

10

Moreover, we have previously "disagree[d] with the Ninth Circuit's suggestion that 'the substitution of the term 'building or structure' for the term 'building' . . . . was one of form, not substance.'" United States v. Rivera-Oros, 590 F.3d 1123, 1128 n.4 (10th Cir. 2009) (quoting Grisel, 488 F.3d at 848) (alterations in original).  In United States v. Cummings, 531 F.3d 1232, 1235 (10th Cir. 2008), we rejected the "invitation to find the phrase 'or other structure' superfluous," because "the generic definition [of burglary] broadly construes the possible settings for burglary."  We reasoned that Taylor "did not restrict the definition to include only buildings," and that including the phrase "or other structure" "dictates that the generic definition encompasses both buildings and *less complete structures*."  Id. (emphasis added).  Accordingly, we held that a state burglary statute that proscribed the unauthorized entry of "a building or other place designed to provide protection for persons or property against weather or intrusion, but does not include vehicles or other conveyances whose primary purpose is transportation" was "coterminous" with the generic definition of burglary.  Id. at 1235, 1236 (quoting Me. Rev. Stat. Ann., tit. 17-A, § 2(24)).  In Rivera-Oros, we noted that although Taylor "clearly limits the places that can be burglarized, we have not gone as far as the Ninth Circuit."  590 F.3d at 1128 n.4.

In light of the guidance the Supreme Court has offered in Shepard, and in light of our prior precedent in Cummings and Rivera-Oros, we conclude that the "building or other structure" element in generic burglary encompasses those

11

burglaries that have been "committed in a building or enclosed space . . ., not in a boat or motor vehicle." Shepard, 544 U.S. at 16. Because Silva pleaded guilty to the unauthorized entry of "a structure, a shed," ROA Vol. 1 at 67, which by its nature is an enclosed space, Silva's prior conviction for burglary qualifies as a violent felony. See King, 422 F.3d at 1058 (concluding that because a defendant pleaded guilty to a charge in an indictment alleging that he burgled "a *structure*, American Self-Storage Unit # 136," "[s]imply by the words used, . . . [the defendant] was convicted for unlawfully entering a structure").

*Aggravated Assault*

The district court determined that Silva's New Mexico conviction for aggravated assault qualified as a violent felony because the crime has "as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). Similar to the previous analysis, we apply a categorical approach to determine whether a prior conviction qualifies as a violent felony under § 924(e)(2)(B)(i). United States v. Hernanadez, 568 F.3d 827, 829 (10th Cir. 2009). We consult "only . . . the fact of conviction and the statutory definition of the prior offense, and do not generally consider the particular facts disclosed by the record of conviction." Id. (citation and quotation omitted). When a criminal statute proscribes a range of conduct that is broader than the ACCA's definition of violent felony, we employ a modified-categorical approach and consult "charging documents and documents

12

of conviction to determine whether the defendant in a particular case was convicted of an offense" that qualifies as a violent felony. Id. (quotation and citation omitted).

Recently, in Johnson v. United States, --- U.S. ---, 130 S. Ct. 1265 (2010), the Supreme Court interpreted the meaning of "physical force" under § 924(e)(2)(B)(i). Drawing upon several dictionary definitions, and considering "the context of a statutory definition of '*violent* felony,'" the Court concluded "the phrase 'physical force' means *violent* force–that is, force capable of causing physical pain or injury to another person." Id. at 1271 (emphasis in original).

Given the Court's ruling in Johnson, we turn to Silva's New Mexico conviction for aggravated assault in 2006. Silva was convicted pursuant to N.M. Stat. § 30-3-2(A), which defines aggravated assault as "unlawfully assaulting or striking at another with a deadly weapon." New Mexico in turn defines an assault as an attempted battery, certain use of insulting language, or "any unlawful act, threat or menacing conduct which causes another person to reasonably believe that he is in danger of receiving an immediate battery . . . ." N.M. Stat. § 30-3-1.

Silva argues that the commission of aggravated assault with a deadly weapon in New Mexico can occur under either of two theories: by attempting a battery with a deadly weapon, or by "engaging in conduct with a deadly weapon that causes the victim to believe he or she was about to receive a battery." Aplt. Br. at 54-55; see also N.M. U.J.I. 14-304 to -306 (describing these alternate

13

theories).  Silva argues that the latter theory of aggravated assault—what Silva calls "apprehension causing" aggravated assault—does not have as an element the use, attempted use, or threatened use of physical force.  Because the modified-categorical approach does not reveal the theory of aggravated assault to which Silva pleaded guilty,[3] Silva contends that his aggravated assault conviction is not a violent felony under the ACCA.

In light of Silva's argument, we focus our analysis on "apprehension causing" aggravated assault.  That theory of aggravated assault "requires proof that [the] defendant threatened or engaged in menacing conduct with a deadly weapon toward a victim, causing the victim to believe he or she was about to be in danger of receiving an immediate battery."  State v. Bachicha, 808 P.2d 51, 54 (N.M. Ct. App. 1991); see also Aplt. Br. at 55 (citing Bachicha for "apprehension causing" aggravated assault).  "Proof of general criminal intent is also a necessary element," Bachicha, 808 P.2d at 54, which the New Mexico Supreme Court defines as "conscious wrongdoing or the purposeful doing of an act the law declares to be a crime," State v. Campos, 921 P.2d 1266, 1277 n.5 (N.M. 1996).  In addition, aggravated assault requires the use of a "deadly weapon."  The

---

[3] Applying the modified-categorical approach, we note that the indictment tracked the statutory language of N.M. Stat. § 30-3-2(A) and alleged "[t]hat on or about the 13th day of April, 2006, . . . the above-named defendant did unlawfully assault or strike at Martin Zamora, with a firearm, which was a deadly weapon." ROA Vol. 1, at 79.  Silva agreed to enter a plea of no contest to this charge pursuant to a written plea agreement that did not describe the crime.  Id. at 86-88. The record does not contain the plea colloquy.

14

aggravated assault statute does not define the term, but the New Mexico Criminal Code contains a uniform definition of "deadly weapon" that is "used in the Criminal Code," N.M. Stat. § 30-1-12, and has been recognized by the New Mexico Supreme Court as "applicable to a broad range of offenses involving both use and possession of deadly weapons," State v. Nick R., 218 P.3d 868, 871 (N.M. 2009) (listing examples); see also State v. Traeger, 29 P.3d 518, 521-22 (N.M. 2001) (applying the uniform definition of "deadly weapon" to a charge of aggravated battery under N.M. Stat. § 30-3-5). Under that definition,

> "deadly weapon" means any firearm, whether loaded or unloaded; or any weapon which is capable of producing death or great bodily harm, including but not restricted to any types of daggers, brass knuckles, switchblade knives, bowie knives, poniards, butcher knives, dirk knives and all such weapons with which dangerous cuts can be given, or with which dangerous thrusts can be inflicted, including swordcanes, and any kind of sharp pointed canes, also slingshots, slung shots, bludgeons; or any other weapons with which dangerous wounds can be inflicted[.]

Id. § 30-1-12(B); see also United States v. Abeyta, 27 F.3d 470, 474 n.7 (10th Cir. 1994) (White, J.) (resorting to § 30-1-12(B) to define "deadly weapon" in § 30-3-2(A)). When we consider these elements together, the issue becomes whether "apprehension causing" aggravated assault—which requires proof that a defendant purposefully threatened or engaged in menacing conduct toward a victim, with a weapon "capable of producing death or great bodily harm"—is a violent felony under the ACCA.

Applying Johnson, we conclude that "apprehension causing" aggravated

15

assault in New Mexico includes as an element the threatened use of "force capable of causing physical pain or injury to another person." See Johnson, 130 S. Ct. at 1271. Threatening or engaging in menacing conduct toward a victim, with a weapon capable of producing death or great bodily harm, threatens the use of "*violent* force" because by committing such an act, the aggressor communicates to his victim that he will potentially use "*violent* force" against the victim in the near-future. Additionally, "apprehension causing" aggravated assault threatens the use of "*violent* force" because the proscribed conduct always has the potential to lead to "*violent* force."

We draw support for this conclusion from a line of cases interpreting United States Sentencing Guideline § 2L1.2(b)(1)(A)(ii), which increases a defendant's offense level based on a prior conviction for a "crime of violence." Similar to the ACCA's definition of violent felony, an application note to that guideline provision defines "crime of violence" as "any of the following: . . . aggravated assault, . . . or any offense . . . that has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2 app. n.1(B)(iii). Given "the similarity in language between the ACCA and USSG, we have occasionally looked to precedent under one provision for guidance under another in determining whether a conviction qualifies as a violent felony." Hernandez, 568 F.3d at 830 & n.3 (looking to U.S.S.G. § 2L1.2(b)(1) for guidance).

16

In United States v. Treto-Martinez, 421 F.3d 1156, 1159-60 (10th Cir. 2005), we concluded that a Kansas conviction for aggravated battery against a law enforcement officer qualified as a "crime of violence" under § 2L1.2(b)(1)(A) because it constituted the threatened use of physical force. Similar to Silva's argument in this case, the defendant in Treto-Martinez argued that his conviction did not qualify as a crime of violence because the charging documents did not specify the subsection under which the defendant pleaded guilty, and one of the ways of committing the underlying crime of aggravated battery—"intentionally causing physical contact with another person when done in a rude, insulting or angry manner with a deadly weapon"—did not qualify as a crime of violence. Id. at 1158 (quoting Kan. Stat. Ann. § 21-3414(a)(1)(C)). We rejected this argument, reasoning that

> [A] person who touches a police officer with a deadly weapon in "a rude, insulting or angry manner," has at the very least "threatened use of physical force" for purposes of § 2L1.2(b)(1)(A). Even if the physical contact does not produce bodily injury, the manner in which the physical contact with a deadly weapon must occur to violate the Kansas statute clearly has as an element the "threatened use of physical force." Causing physical contact with a deadly weapon in "a rude, insulting or angry manner," if not sufficient in itself to constitute actual use of physical force under § 2L1.2(b)(1)(A), could always lead to more substantial and violent contact, and thus it would always include as an element the "threatened use of physical force."

Id. at 1160.[4]

_____

[4] We also concluded "that all intentional physical contact with a deadly weapon done in a rude, insulting or angry manner does constitute physical force

(continued...)

17

The Fifth Circuit followed this rationale in concluding that a Florida conviction for aggravated battery qualified as a crime of violence under § 2L1.2(b)(1)(A).  United States v. Dominguez, 479 F.3d 345, 349 (5th Cir. 2007). The court construed the elements of the aggravated battery offense at issue in Dominguez as "intentionally (1) touch[ing] or str[iking] the victim (2) with a deadly weapon (3) against the victim's will."  Id. at 347-48.  The court concluded that "the touching of an individual with a deadly weapon creates a sufficient threat of force to qualify as a crime of violence."  Id. at 348.  Applying Treto-Martinez, the Fifth Circuit reasoned that "[a]lthough an intentional touching with a deadly weapon . . . may not in itself cause injury, it could lead to more violent contact, or could at least put the victim on notice of the possibility that the weapon will be used more harshly in the future, thereby constituting a threatened use of force."  Id. at 349.  In a subsequent unpublished decision, the Fifth Circuit concluded that a prior conviction for aggravated assault in violation of N.M. Stat. § 30-3-2(A), the same subsection under which Silva was convicted, qualified as a crime of violence under § 2L1.2(b)(1)(A) because the proscribed conduct "give[s] rise to a threatened use of force under the reasoning in Dominguez."  United States v. Licon-Nunez, 230 F. App'x 448, 451-52 (5th Cir. 2007).

We recognize that Treto-Martinez and Dominguez analyzed aggravated

---

⁴(...continued)
under § 2L1.2(b)(1)(A)."  Treto-Martinez, 421 F.3d at 1159.

18

battery statutes that criminalized intentional physical contact with a deadly weapon; nonetheless, we consider these decisions persuasive because "apprehension-causing" aggravated assault under N.M. Stat. § 30-3-2(A) creates a commensurate threat of physical force such that the crime qualifies as a violent felony under the ACCA. Purposefully threatening or engaging in menacing conduct toward a victim, with a weapon capable of causing death or great bodily harm, threatens the use of "force capable of causing physical pain or injury" in two different ways. See Johnson, 130 S. Ct. at 1271. The conduct "could always lead to . . . substantial and violent contact, and thus it would always include as an element" the threatened use of violent force. Treto-Martinez, 421 F.3d at 1160. And the conduct "could at least put the victim on notice of the possibility that the weapon will be used more harshly in the future, thereby constituting a threatened use of force." Dominguez, 479 F.3d at 349.

Notwithstanding the fact that "apprehension causing" aggravated assault requires proof of general criminal intent, Bachicha, 808 P.2d at 54, Silva argues it is not a violent felony because the ACCA only "encompass[es] those offenders convicted of crimes involving 'intentional or purposeful conduct.'" Aplt. Br. at 53. He cites Leocal v. Ashcroft, 543 U.S. 1, 11 (2004) and United States v. Zuniga-Soto, 527 F.3d 1110, 1124 (10th Cir. 2008) for this proposition. In Leocal, the Supreme Court interpreted the "crime of violence" definition contained in 18 U.S.C. § 16(a), which is in all relevant aspects identical to §

19

924(e)(2)(B)(i). The Court concluded that the "key phrase in § 16(a)–the 'use . . . of physical force against the person or property of another'–most naturally suggests a higher degree of intent than negligent or merely accidental conduct." Id. at 9 (quoting § 16(a); alterations in original). Though Leocal did not decide whether "the *reckless* use of force against a person . . . of another qualifies as a crime of violence," id. at 13 (emphasis in original), we later joined a majority of our sister circuits in holding that "a *mens rea* of recklessness does not satisfy [the] use of physical force requirement under § 2L1.2's definition of 'crime of violence.'" Zuniga-Soto, 527 F.3d at 1124.

Proceeding from the premise that the ACCA only encompasses intentional conduct, Silva argues that "apprehension causing" aggravated assault "does not have as an element an intent to assault, injure or frighten." Aplt. Br. at 56. Because "apprehension causing" aggravated assault does not require proof of "any intent with respect to the perceived threat [the defendant] has raised in the mind of the victim," Silva argues that "apprehension causing" aggravated assault "does not have as an element the intentional use, attempted use or threatened use of physical force." Id.

We reject this argument because it ignores Silva's plea of no contest to aggravated assault, which was an admission of intentional conduct. "Apprehension causing" aggravated assault requires proof of general criminal intent, Bachicha, 808 P.2d at 54, which New Mexico courts have consistently

20

"defined as conscious wrongdoing or the purposeful doing of an act that the law declares to be a crime." Campos, 921 P.2d at 1277 n.5; see also State v. Santillanes, 27 P.3d 456, 469 n.5 (N.M. 2001) ("General criminal intent means the purposeful doing of an act that the law declares to be a crime." (citation and quotation omitted)); State v. Wilson, 228 P.3d 490, 494 (N.M. Ct. App. 2009) (referring to general criminal intent as "the requirement that a defendant generally intend to commit the act"); State v. Stewart, 122 P.3d 1269, 1278 (N.M. Ct. App. 2005) ("General criminal intent has been defined as acting 'intentionally,' which in turn has also been termed acting 'purposely.'"); State v. Gonzales, 107 P.3d 547, 553 (N.M. Ct. App. 2005) ("The element of general criminal intent is satisfied if the State can demonstrate beyond a reasonable doubt that the accused purposely performed the act in question." (citation, quotation, and alteration omitted)). Silva concedes as much in his brief when he states that in a prosecution for "apprehension causing" aggravated assault, New Mexico's Uniform Jury Instruction for general criminal intent requires a jury to find beyond a reasonable doubt that "the defendant acted intentionally when he committed the crime. A person acts intentionally when he purposely does an act which the law declares to be a crime." N.M. U.J.I. 14-141; see Aplt. Br. at 55-56. That aggravated assault does not require proof of a specific intent to assault the victim, State v. Manus, 597 P.2d 280, 284 (N.M. 1979), overruled on other grounds by Sells v. State, 653 P.2d 162, 164 (N.M. 1982); see also Abeyta, 27 F.3d at 474

21

(noting that aggravated assault under N.M. Stat. § 30-3-2(A) "does not require any showing that the defendant specifically intended to inflict bodily harm on his victim"), or of a specific "intent[] to injure or even frighten" the victim, State v. Morales, 45 P.3d 406, 414 (N.M. Ct. App. 2002), only confirms that aggravated assault is not a specific intent crime, but rather is a general intent crime. See Campos, 921 P.2d at 1277 n.5 ("The class of general-intent crimes . . . is best defined as the those crimes which are not specific-intent crimes, which would include both crimes with a mens rea of general criminal intent and those with a mens rea of knowledge."). The presence or absence of an element of specific intent does not dispositively determine whether a prior conviction qualifies as a violent felony under the ACCA. Cf. United States v. Am, 564 F.3d 25, 34 (1st Cir. 2009) (concluding that defendant's Massachusetts conviction for "assault by means of a dangerous weapon" was a violent felony under the ACCA, even though it was "a general intent crime"). Because Silva admitted to engaging in conduct constituting the threatened use of physical force, and admitted to engaging in that conduct intentionally, his aggravated assault conviction qualifies as a violent felony.

The dissent would conclude that Silva's aggravated assault conviction is not a violent felony, and would extend Leocal and Zuniga-Soto to conclude that crimes have as an element the "threatened use of physical force against the person of another" only if they proscribe "conduct performed with an intent to induce

22

fear." Dissent at 5. But Leocal cannot be read as definitively supporting that extension. That case resolved an issue very different from the one we face here: whether state DUI offenses, "which either do not have a *mens rea* component or require only a showing of negligence in the operation of a vehicle," have as an element the use of physical force against the person of another. 543 U.S. at 6. In resolving that issue, the Court made clear that it "d[id] not deal . . . with an *attempted* or *threatened* use of force." Id. at 8-9 (emphases in original).

Moreover, the dissent focuses on what apprehension-causing aggravated assault lacks as an element, namely the specific intent to induce fear. Missing from its analysis is a discussion of the intentional conduct that N.M. Stat. § 30-3-2(A) actually proscribes. As we have detailed, apprehension-causing aggravated assault requires proof of more than the display of dexterity in handling a weapon; the crime requires proof that a defendant purposefully threatened or engaged in menacing conduct *toward* a victim, with a weapon capable of producing death or great bodily harm. See Bachicha, 808 P.2d at 54. We conclude that this intentional conduct threatens the use of physical force against the person of another, and therefore qualifies as a violent felony under the ACCA.

Finally, we note that our precedent is contrary to the dissent's assertion that the discharge of a firearm, committed without the specific intent to injure or to induce fear, would not qualify as a violent felony. Dissent at 5. Similar to our foregoing analysis, in Hernandez we concluded that a Texas conviction for

23

"knowingly discharg[ing] a firearm at or in the direction of . . . one or more individuals" qualified as a violent felony under the ACCA because the crime constituted "a real *threat* of the use of physical force against that individual." 568 F.3d at 829, 830 (quoting Tex. Penal Code § 22.05(b)(1)) (emphasis in original). In doing so, we rejected the argument that the crime could not be a violent felony because "it d[id] not also require an intent to injure or kill . . . ." Id. at 831. "To be a violent felony," we reasoned, "[a] statute only needs to involve the use, threatened use, or attempted use of physical force against another." Id. Thus, even assuming "one could knowingly discharge a firearm at or in the direction of an individual without actually intending to injure him," the crime "still involve[d] the purposeful *threatened* use of physical force against the person of another." Id. at 832.[5]

## III

For the reasons stated, we AFFIRM the judgment of the district court.

---

[5] Silva has argued that "because of the 'knowingly' requirement, to violate the statute in [Hernandez] the defendant had to be aware of the threat he was posing." Aplt. Br. at 57. However, all we said in Hernandez was that to satisfy the "knowingly" requirement "the discharge of a firearm at or in the direction of an individual must necessarily be undertaken with awareness." 568 F.3d at 831. Silva cannot now contend, in the face of his 2006 no contest plea, that his actions underlying that aggravated assault conviction were accidental, or were committed unknowingly.

09-2035 - *United States v. Silva*

**HARTZ**, Circuit Judge, dissenting:

I respectfully dissent. Although I agree with the majority opinion that our decision in *United States v. King*, 422 F.3d 1055 (10th Cir. 2005), compels the conclusion that Mr. Silva's burglary offense was a violent felony under 18 U.S.C. § 924(e) (the ACCA), I do not agree that his aggravated-assault offense was a violent felony. Because Mr. Silva did not have three prior convictions for violent felonies, the ACCA did not subject him to a mandatory minimum 15-year sentence.

The majority opinion concludes that Mr. Silva's aggravated-assault offense was a violent felony because it had "as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). But my analysis of this language quoted from the ACCA and of the elements of the New Mexico offense leads me to the contrary conclusion.

Mr. Silva was convicted of "unlawfully assaulting or striking at another with a deadly weapon." N.M. Stat. Ann. § 30-3-2(A) (1978). All agree that the relevant statutory definition of *assault* is "any unlawful act, threat or menacing conduct which causes another person to reasonably believe that he is in danger of receiving an immediate battery." *Id.* § 30-3-1. As I understand New Mexico law, one can be guilty of assault (including assault with a deadly weapon) if one causes the victim reasonably to believe that he or she is about to be battered, even if one does not intend to create that belief. For example, a person who

intentionally handles a weapon in a manner that induces a fear of battery can be guilty of assault even if he merely wants to show off his dexterity in handling the weapon, without any interest in inducing fear. This feature of the New Mexico crime of assault is significant because, as I understand the precedents of the Supreme Court and this circuit, an offense does not have "as an element the threatened use of physical force against the person of another" unless an element of the offense is that the offender *intend* that the victim feel threatened. I will first discuss the meaning of the ACCA, and then the New Mexico statute.

The ACCA issue before us is whether an offense "has as an element the . . . threatened use of physical force against the person of another," 18 U.S.C. § 924(e)(2)(B)(i), if the offense can be committed without the offender's having an intent to batter or to induce fear in another person. The government points out that § 924(e)(2)(B)(i) does not explicitly require an intent to cause harm or fear. The words *knowingly*, *willfully*, *intentionally*, and the like are absent from the statutory language. But as the Supreme Court observed in *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004), in ordinary parlance one does not accidentally or inadvertently *use physical force against* something. Leocal was a lawful permanent resident of the United States who had been ruled deportable because he had committed a crime of violence as defined in 18 U.S.C. § 16(a). Employing language that is in all relevant respects identical to that in the ACCA, that statute defines a crime of violence to include "an offense that has as an element the use, attempted use, or

threatened use of physical force against the person or property of another." 18

U.S.C. § 16(a).  Leocal argued that his driving-under-the-influence (DUI) offense

was not a crime of violence because it did not require any intent to use force.  *See*

*Leocal*, 543 U.S. at 9.  The Supreme Court agreed.  It said that the phrase *use*

*physical force against* implied "a higher degree of intent than negligent or merely

accidental conduct."  *Id.*  The Court explained:

> [I]t is much less natural to say that a person actively employs
> physical force against another person by accident.  Thus, a person
> would "use physical force against" another when pushing him;
> however, we would not ordinarily say a person "uses physical force
> against" another by stumbling and falling into him.

*Id.* (brackets and ellipses omitted).  Notably, the intent that was important in that

case was the intent to use force.  The act of driving that underlay the DUI

conviction was undoubtedly intentional, but the intent to drive did not suffice.

This court followed *Leocal* in *United States v. Zuniga-Soto*, 527 F.3d 1110

(10th Cir. 2008), which interpreted the same language in § 2L1.2 of the United

States Sentencing Guidelines.  The issue in that case was whether Zuniga-Soto's

prior Texas conviction for assaulting a public servant was a "crime of violence"

under the sentencing guidelines.  *See id.* at 1117.  The guidelines' definition of

*crime of violence* differs somewhat from the ACCA definition of *violent felony*,

but it includes a residual clause that is essentially identical to § 924(e)(2)(B)(i):

"any other offense under federal, state, or local law that has as an element the

use, attempted use, or threatened use of physical force against the person of

another." USSG § 2L1.2 cmt. n.1(B)(iii).[1] Under Texas law Zuniga-Soto's offense could be committed by either intentionally, knowingly, or recklessly causing bodily injury to a public servant. *See id.* at 1121–22. We held that mere "recklessness does not satisfy [the] use of physical force requirement under § 2L1.2's definition of 'crime of violence.'" *Id.* at 1124. Because Zuniga-Soto could have been convicted even if found to have acted only recklessly (and not intentionally) in assaulting the public servant, "the 'use of physical force' was not an element of the offense of conviction." *Id.* at 1125 (ellipsis omitted). Of course, even one who acts recklessly intends certain actions—such as pulling a trigger, driving a car, or raising an arm; but it is causing bodily injury that must be intended if the offense is to satisfy the ACCA.

To be sure, neither *Leocal* nor *Zuniga-Soto* is an ACCA case; but the language they interpreted is indistinguishable from the ACCA language before us. They are persuasive authority. *See United States v. Williams*, 559 F.3d 1143,

---

[1] *Crime of violence* is defined in full as:

> any of the following offenses under federal, state, or local law: Murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses (including where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced), statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

USSG § 2L1.2 cmt. n.1(B)(iii).

1147 n.7 (10th Cir. 2009) (noting that in interpreting the ACCA and the guidelines, we have looked to cases construing similar language in other provisions). And because they establish that "the use of physical force against the person of another" requires an intent to use force against another, I would conclude that "the threatened use of physical force against the person of another," likewise requires an *intentional* threat—that is, conduct performed with an intent to induce fear of a battery or to commit a battery. It would be passing strange to say that the term *violent felony* encompasses the application of physical force only if the offender *intends* to apply the force, but it encompasses acts inducing fear of the application of physical force even when there is no intent to injure or frighten. Inducing the fear of a battery by intentional acts (such as driving a car or firing a weapon) that are not intended to induce fear or to hurt someone does not suffice under the ACCA any more than does applying physical force against another person by intentional acts (such as driving a car or firing a weapon) that are not intended to apply physical force against another person.

I do not read *United States v. Hernandez*, 568 F.3d 827 (10th Cir. 2009), as saying anything to the contrary. That opinion did not address the New Mexico statute at issue here, but a Texas crime of "knowingly discharg[ing] a firearm at or in the direction of [a named person]." *Id.* at 829 (internal quotation marks omitted). The court never opined on whether an offense could be a violent felony under the ACCA in the absence of an intent to injure or to induce fear. Rather,

quoting a Fifth Circuit opinion addressing the same Texas statute, it said, "'[I]t is unreasonable to conclude that the purposeful discharge of [a firearm] in the direction of a person would not import a *communicated intent to inflict physical or other harm.*'"  *Id.* at 830 (quoting *United States v. Hernandez-Rodriguez*, 467 F.3d 492, 495 (5th Cir. 2006)) (emphasis added; alterations omitted).  As I shall explain, such an intent is not required under the New Mexico statute.

If the issue before us in this case had been before the court in *Hernandez*, one would have expected that opinion to address the Supreme Court's decision in *Leocal* and this circuit's discussion of intent in *Zuniga-Soto*.  But *Hernandez* includes no mention of *Leocal*, and it cites *Zuniga-Soto* only for a totally different point.  The majority opinion is correct that *Hernandez* rejected the defendant's argument that the Texas crime failed to qualify as a violent felony under the ACCA because "it d[id] not . . . require an intent to injure or kill."  568 F.3d at 831.  But, as becomes clear from reading the quoted language in context, *Hernandez*'s reason for rejecting the argument was that an offense could be a violent felony if there was an intentional *threat*, even if there was no "intent to injure or kill."  The paragraph from which the quoted language is taken ends with a sentence citing circuit precedent in which "[w]e found that knowingly placing someone in fear by the use of a deadly weapon constitutes threatening someone, and easily satisfies the requirement of the threatened use of physical force against the person of another."  *Id.* (internal quotation marks omitted).  And the next

-6-

paragraph begins with a sentence that states that an intent to induce fear is enough: "Following *Hernandez's* logic, however, we should not have deemed that conviction a violent felony unless the statute contained some requirement of an intent to injure or kill, rather than simply the intent to undertake the proscribed action—to place a person in fear." *Id.* at 832. *Hernandez* summed up by saying that even if one can intentionally induce fear without intending to injure, the Texas crime still met the requirements to be a violent felony.

> Even if we were to assume that it is possible to knowingly place someone in fear by the use of a deadly weapon without actually intending to injure that person, and that it is possible that one could knowingly discharge a firearm at or in the direction of an individual without actually intending to injure him, both statutes still involve *the purposeful threatened use of physical force against the person of another*.

*Id.* (emphasis added). If I thought that *Hernandez* had already decided the issue before us, I would comply with circuit precedent. But I am confident that it did not.

Turning now to the applicable New Mexico law, the leading New Mexico aggravated-assault decision is *State v. Manus*, 597 P.2d 280 (N.M. 1979), *overruled on other grounds by Sells v. State*, 653 P.2d 162 (N.M. 1982). A police officer arrested Manus's wife for traffic violations and placed her in a police car parked in front of the Manuses' home. A bystander stopped her vehicle behind the police car to report an accident to the arresting officer. As the bystander and the officer were filling out an accident report, Manus approached the vehicles

with a loaded shotgun, fired twice, and killed the officer. *See id.* at 283. He was convicted not only of first-degree murder of the officer, but also of aggravated assault of the bystander. He argued on appeal that there was insufficient evidence of any intentional assault directed at the bystander. *See id.* at 282, 284. The court rejected the argument, explaining, "The State was not required to prove that Manus intended to assault" the bystander, "only that he did an unlawful act which caused [the bystander] to reasonably believe that she was in danger of receiving an immediate battery, that the act was done with a deadly weapon, and that it was done with a general criminal intent." *Id.* at 284. It affirmed the conviction. *See id.*

Following *Manus*, the New Mexico opinion most in point is the court of appeals opinion in *State v. Morales*, 45 P.3d 406 (N.M. Ct. App. 2002), written by then Chief Judge Bosson (later Chief Justice of the New Mexico Supreme Court). Morales was convicted of aggravated assault for hitting a police officer with his car when Morales was driving out of a vacant lot. Morales argued that the evidence was insufficient to convict him because he had not intended to hit the officer but was "simply trying to leave the vacant lot." *Id.* at 414. The court ruled that the evidence was sufficient because such intent was not required. It explained:

> *[T]he State was not required to prove that Defendant intended to injure or even frighten [the officer].* Instead, the State was required to prove . . . that Defendant's conduct caused [the officer] to believe

> Defendant was about to hit him with his vehicle, that a reasonable person in [the officer's] position would have believed he was about to be hit by the vehicle, and that Defendant's conduct threatened [the officer's] safety. [The officer] testified that he thought he was going to be hit by the vehicle and that the vehicle was so close that he could feel it brush his clothes as it went by. This is sufficient evidence to support the conviction.

*Id.* at 414–15 (emphasis added). Thus, one can violate the New Mexico aggravated-assault statute without intending to injure the victim or even intending to cause the victim to fear injury. Mr. Silva's aggravated-assault offense is therefore not a violent felony under the ACCA.

The majority opinion is content that the state statute comes under the ACCA because, as the New Mexico Supreme Court wrote in *Manus*, aggravated assault must be "done with a general criminal intent." 597 P.2d at 284. But the requirement of "general criminal intent" does not resolve the issue before us. The quoted term is extremely vague and subject to many possible meanings. An unexplained general-intent requirement does not tell us which of the physical acts necessary to commit an offense must be intentional or what result the offender must intend. As Professor LaFave has commented, to say "that a 'general intent' is needed . . . is often not helpful because of the ambiguity attending that phrase." 1 Wayne R. LaFave, Substantive Criminal Law § 5.1(b) (2d ed. 2003). This court, too, has noted the imprecision of the term. *See United States v. Teague*, 443 F.3d 1310, 1319 (10th Cir. 2006). In particular, general intent may mean "only the intention to make the bodily movement which constitutes the act which

the crime requires." LaFave, *supra*, § 5.2(e) (internal quotation marks omitted).

This definition is consistent with the New Mexico Uniform Jury Instruction on

general intent, which states that "[a] person acts intentionally when he purposely

does an act which the law declares to be a crime." N.M. Uniform Jury Instruction

14-141, NMRA, UJI-Crim. Indeed, the New Mexico Court of Appeals has

recently endorsed this definition of the term as stating New Mexico law. *See*

*State v. Gonzales*, 107 P.3d 547, 553 (N.M. Ct. App. 2005) (citing UJI 14-141 and

quoting LaFave's definition). Thus, the defendant in *Morales* could have acted

with general intent—by intentionally driving his car out of the vacant

lot—without intending to injure or induce fear in the officer whom he was

convicted of assaulting. *See* 45 P.3d at 414–15. But the intent required for an

offense to be a violent felony under the ACCA is not satisfied simply because the

offender intended to engage in certain bodily movements; the necessary intent is

an intent to apply physical force against another person or to induce fear of such

force.

　　To sum up, under the New Mexico Court of Appeals decision in *Morales*,

Mr. Silva's conviction of aggravated assault could have been based on his driving

a vehicle in the direction of the victim even though Mr. Silva had no intent to

injure or frighten the victim. I do not think that such an offense is a violent

felony under the ACCA.

Perhaps the panel majority believes that the holding in *Morales* does not accurately state New Mexico law. In my view, however, the court of appeals decision in *Morales* is reliable authority on the subject, and I see nothing in *Morales* inconsistent with other New Mexico decisions. Moreover, even if *Morales* is questionable, that uncertainty does not assist the government. The issue is not whether Mr. Silva *should* (under *properly* applied law) have been convicted of aggravated assault if he lacked the intent to harm or to induce fear, but whether he *could* have been convicted (absent such intent) under the law *actually* applied in New Mexico courts. I find it significant that when the United States Supreme Court held that attempted burglary under Florida law is a violent felony, it not only considered the Florida Supreme Court's narrowing construction of Florida's attempt statute, but added that "Florida's lower courts appear to have consistently applied this [construction]." *James v. United States*, 550 U.S. 192, 202–03 (2007). The quoted sentence would have been unnecessary if the lower-court applications of the state supreme court decisions were irrelevant.

Accordingly, Mr. Silva's aggravated-assault offense is not a violent felony under the ACCA, and his sentence must therefore be reversed.